STEWART *v.* GRAND LODGE.

*(Nashville.* January 22, 1898.)

1. LIFE INSURANCE. *Forfeiture.*

To defeat an action upon a certificate of a benevolent order on account of nonpayment of assessments, it must be affirmatively and distinctly proved that the assessment, which the member failed to pay, was made in exact accordance with the constitution and laws of the order, and no presumption will be indulged, in such case. in favor of the regularity or legality of assessments. (*Post, pp. 271, 272.*)

Case cited: 85 Ky., 1.

2. SAME. *No estoppel to deny validity of assessment.*

The beneficiary in a certificate of a benevolent order is not estopped to deny the regularity or validity of an assessment, on the nonpayment of which a forfeiture is predicated, by averring, in a suit upon the certificate, that the insured had, a short time before his death, sent and offered to pay his "dues," or what he "owed," or what he "was rightfully due," to the order. "Dues" does not necessarily include "assessments." The member is not "rightfully due," and does not "owe" an illegal assessment. (*Post, pp. 272–275.*)

3. SAME. *Waiver.*

Offer to pay an assessment constitutes a waiver of notice of its making, but not a waiver of matters affecting its regularity or legality. (*Post, p. 274.*)

Case cited: 140 Ill., 301.

4. LACHES. *Not imputable, when.*

Laches cannot be imputed to a beneficiary who has delayed, for eight years, to sue on a benefit certificate, where he is pro-

tected by infancy from the bar of the statute of limitations. (*Post, p. 275.*)

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County. H. H. Cook, Ch.

T. A. Street and Chambers & Zarecor for Stewart.

Nolen & Slemons for Grand Lodge.

Beard, J. This suit was brought to recover on a certificate issued by the defendant order to W. H. Stewart, of which complainant was the beneficiary. Stewart died eight years before the institution of the suit, during which period complainant was a minor. There was a decree in favor of complainant rendered by the Chancellor, which was affirmed by the Court of Chancery Appeals. On this appeal from the decree of this latter Court, the error principally relied upon is that it rests upon a theory necessarily inconsistent with certain admissions of the bill of complainant, which will be hereafter particularly noticed.

The bill alleges that the father of complainant, Katie, was a member of Hermitage Lodge, one of the subordinate lodges of the defendant order, in good standing at the date of his death, on December

29, 1888, and that he was the holder of a certificate theretofore issued to him as such member, under its rules, by the order, of which the complainant was the named beneficiary, entitling her to receive from the order the sum of $2,000, and that this sum had not been paid to her.

The bill was answered by the defendant order, and, in this answer it was admitted that W. H. Stewart was at one time a member of Hermitage Lodge, and that, as such, a certificate was issued to him, of which complainant was the beneficiary, but it was denied that he was a member at the date of his death. On the contrary, it is averred that on October 28, 1888, about sixty days before his death, he became suspended for nonpayment of assessments, and was not thereafter reinstated.

On these pleadings and the evidence adduced, the decrees of the respective Courts below were rested. It is apparent that upon the issues as thus presented, it being admitted that Stewart was a member in good standing up to a point only sixty days before his death, and, as such, the holder of the certificate sued on, of which complainant was named as beneficiary, that, in order to defeat a recovery in this action, the burden was imposed on defendant of making good its averment that he had forfeited his membership, so that this certificate in favor of complainant was inoperative; and so the Court of Chancery Appeals held.

That Court, in its opinion, set out, *in totidem*

*verbis*, the rules of the order with regard to the making of assessments, and as to the effect of non-payment by a member of an assessment charged against him. Without embodying here these rules literally, it is sufficient to say they provide that whenever the beneficiary fund of the grand lodge treasury is reduced below $2,000, or where by delays, etc., this fund by the payment of death claims will drop below that figure, then it becomes the duty of the grand recorder to call upon the subordinate lodges to forward the beneficiary fund in their respective treasuries, and at the time of making such call, to make one assessment of one dollar upon each member of the order who became such previous to the date of the death upon which the assessment is made. Every call made on the subordinate lodges shall be dated on the first day of the month; shall contain a list of all deaths occurring since the last call was made, and shall, in every case, receive the approval of the grand lodge finance committee, and a compliance with these conditions "constitute the making of an assessment." These rules also provide that notice of such assessment is to be given, personally or by mail, to each member, by the eighth of the month, and in the event of nonpayment of such assessment by the twenty-eighth, the member is, *ipso facto*, suspended from all rights and benefits in the order, and can only be reinstated by complying with certain requisitions, which need not, in the condition of this record, be set out.

It is true that the Court of Chancery Appeals find, as a fact, that the financier of Hermitage Lodge, in November, 1888, mailed a notice to Mr. Stewart informing him that he was suspended from membership in his lodge, but it is equally true that that Court fails to find that assessments were made upon which such suspension could be legally predicated. On this vital point that Court says: "We find no direct evidence in the record on the subject of whether these assessments were regularly called for by the Grand Lodge; . . . that assessments had been called for is inferable, but how made, and how many, does not appear."

It is well settled that assessments in these beneficiary orders or societies must be made in exact accordance with their laws, and that provisions for forfeiture of membership by reason of nonpayment of assessments are strictly construed against the company. The member of such a society "is, as such, subject to liabilities and entitled to privileges. His corporate rights may be subject to the control of the corporation, but his rights as a party assessed rest on the contract which is found in the constitution, rules and regulations of the order. The . . . officers of such society or order have no right to make an assessment on a different basis than that prescribed in its laws. And the members of such societies and their beneficiaries have the right to rely upon the observance by the company of the requirements of its constitution and by-laws. Bacon

on Ben. Soc., Vol. II., Sec. 377. And "no pre-
sumption can arise in favor of the regularity or
legality of its assessments." *Mutual Aid Soc.* v.
*Helburn*, 85 ' Ky., 1. In the present case, the actual
or threatened reduction of the beneficiary fund in
the treasury of the Grand Lodge below the sum of
$2,000; the call of the Grand Recorder upon the
subordinate lodge to send forward the beneficiary
fund in their respective treasuries, accompanied by a
charge of one dollar against each member of the
different lodges who became such prior to the date
of the death with regard to which the assessment is
made, after the approval of the grand lodge com-
mittee of finance, are the essential elements of a
valid assessment. *Mut. Aid Soc.* v. *Helburn*, *supra.*
Suspension depending upon an assessment validly
made, and the record failing to show whether the
assessments for the nonpayment of which the de-
fendant order insists that Stewart had forfeited his
rights as a member, were regularly made, or that
he belonged to that class against whom they could
be made, it follows, as a matter of law, that the
defendant, other matters out of the way, cannot suc-
cessfully resist the claim of complainant.

The question then recurs on the assignment of
error of the defendant. Was the complainant pre-
cluded by the allegations of her bill from relying
on this legal principle? The argument of defendant,
in maintaining that she is, rests upon what is claimed
as the necessary implication from an averment by

complainant of a payment made to Hume, the financial officer of Hermitage Lodge, by a representative of W. H. Stewart, of a certain sum, a short time before the death of the latter.

The averment of the bill on which this contention rests is as follows: "It was . . . his [Stewart's] custom to send his dues by some one else rather than to carry them in person. A short while before his death, Mr. Stewart sent what he owed the Hermitage Lodge to Mr. J. K. Hume, who was the proper officer to receive the same. Mr. Hume accepted the money, and gave Mr. Witherspoon, the bearer, a receipt therefor. Shortly after this, Mr. Hume called at the residence of Mr. Stewart and told Mrs. Stewart that there was a mistake about the receipt; that Mr. Stewart could not make a valid payment of his dues without coming to the lodge in person. Mrs. Stewart, supposing that such would be necessary, had the receipt returned to Mr. Hume, and accepted the money that had been paid to Mr. Hume. The complainant, therefore, charges that the payment originally made, and which was receipted for, was a valid and binding payment of all money rightfully due to the Hermitage Lodge, and she further charges that the return of the receipt did not affect complainant's right to recover in this suit. The complainant charges that her right to recover is full, perfect, and complete, and that defendant, by a payment once accepted, is estopped from denying this claim."

16 r—18

It is insisted that when complainant's father, W. H. Stewart, paid the money to Hume, that there was an admission by him, rendering unnecessary any evidence in that regard, that the assessments were validly made, and that Stewart had notice they were due.

We think, if the bill had averred that Mr. Stewart had sent his agent to pay the assessments for the nonpayment of which the defendant predicates its right to maintain forfeiture, that this would have been at least a waiver of any defect or irregularity in the matter of notice of the assessment required by the rules. *Hansar* v. *Supreme Lodge*, 140 Ill., 301. But it is not the want of notice, but the lack of proof of a legal assessment in the way of its maintaining this defense, and the averment in the bill fails to supply this fatal defect.

By reference to the clause of the bill already set out, it will be seen that it is " dues " to his order which Mr. Stewart was in the habit of sending by others to the proper officer of his lodge, and that on the occasion in question, the money intrusted to his friend was to pay what he " owed " to his order, and that it was sent by this agent to pay all that was " rightfully due to the Hermitage Lodge.'' Thus it appears that the paragraph on which the defendant seeks to rest its estoppel, in pleading, on complainant, does not, by its terms, include " assessments; " for " dues," in such associations, are clearly distinguished from " assessments.''

But, further, even if it should be conceded that the term, "dues," was broad enough to cover "assessments," yet, the effect of the word would still be limited by the context, to wit: "Mr. Stewart sent what he owed," and directed his agent to pay what was "rightfully due," etc.   So, if the assessments were not validly made, then Mr. Stewart was under no legal obligation to pay them, and his agent, under the commission given to him, had no right to appropriate the money to their payment, and no implication, from such payment, can arise against complainant.

Again, it is insisted that complainant's claim is stale, and, therefore, it should be repelled.   To this, it is a sufficient answer to say, that upon the death of W. H. Stewart, a member in good standing with defendant order, it became the debtor of complainant in the amount of the beneficial certificate, and that nothing short of the statute of limitations could bar her, and this statute has not run because of the continued minority of complainant.

The decree of the Court of Chancery Appeals is affirmed.