Argued 4 October; decided 22 October, 1900.
**MONTOUR v. GRAND LODGE.**
[62 Pac. 524.]

FRATERNAL INSURANCE — EVIDENCE OF PAYMENT OF ASSESSMENT.

1.  The constitution of a beneficial association required that assessments be paid by the twenty-eighth of the month, and that a delinquent member might be reinstated within three months, and after that time must be accepted by a majority vote. A by-law authorized the local lodge to pay all delinquent assessments from the general fund on the fourth meeting of each month, which assessments should be repaid in one month, and that the lodge could not pay delinquent assessments where the previous month's assessment had not been repaid. In 1894 eight assessments were made, the last payable by July 28. Insured paid assessments Nos. 1, 2, 3, and 5, and, by mistake of the financier, paid No. 4 twice, and Nos. 6 and 7 were paid for him by the local lodge. Insured was suspended on August 1 for nonpayment of No. 6, and on November 19 paid all accrued assessments, and applied for reinstatement, which was refused. The beneficiary sued on the certificate, and contended that the insured, by paying No. 4 twice, had one dollar deposited with the financier, which should have been applied to No. 8, as Nos. 6 and 7 had been paid by the local lodge. *Held*, that, since there was no evidence that the insured paid assessment No. 8, refusal to instruct for defendant was erroneous, the failure of the clerk to credit the insured with one payment being cured by the lodge paying No. 6, and, as it also paid No. 7, the one dollar held by the clerk could not be credited on No. 8.

PRACTICE ON APPEAL — WEIGHT OF EVIDENCE — PROVINCE OF JURY.

2.  In law actions the appellate court will not consider whether the jury correctly decided a disputed question, but only if there was any evidence fairly tending to support the verdict: *Sperry* v. *Wesco*, 26 Or. 483, approved.

DUTY OF TRIAL COURT TO DIRECT VERDICT.

3.  Where there is no evidence whatever to support a material issue the trial court should instruct the jury to return a verdict accordingly: *Briscoe* v. *Jones*, 10 Or. 63, applied.

FRATERNAL INSURANCE — DECISION OF THE SOCIETY TRIBUNAL.*

4.  Under a constitutional provision of a mutual beneficial insurance

---

*NOTE.—On the question of the validity of agreements to abide by decisions of the tribunals provided by corporations or associations, see a long note collecting the authorities in 49 L. R. A. pp. 353-384, and especially p. 379 *et seq.*, where the very point in this case is considered.

As to the controlling power of the articles of association and by-laws of mutual benefit societies, see *Union Mutual Assoc.* v. *Montgomery*, 14 Am. St. Rep. 519; *Canfield* v. *Great Camp of Maccabees*, 24 Am. St. Rep. 186, 13 L. R. A. 625; *Hembeau* v. *Great Camp of Maccabees*, 49 L. R. A. 592, 45 Am. St. Rep. 400; note in 19 Am. St. Rep. at p. 786; note in 49 L. R. A. at p. 372.—REPORTER.

society providing that a member who has been suspended or expelled must apply for reinstatement within a given time, and must be accepted by his lodge, and providing that in case of rejection he must appeal to the grand lodge of the order, a suspended member whose application for reinstatement has been rejected, and who did no⁺ appeal, is estopp¬d from contesting the validity of his rejection in the courts.

ESTOPPEL TO DENY VALIDITY OF ASSESSMENT.

5.   Where the plaintiff in an action on a certificate in a mutual beneficial insurance society, admitted all the substantial facts necessary to authorize an assessment, it was not incumbent on the defendant to prove that such assessment was authorized or levied in the manner prescribed by the constitution and by-laws of the order.

From Multnomah: MELVIN. C. GEORGE, Judge.

Action by Lillie Myrtle Montour, by Helen Montour, her guardian *ad litem,* against the Grand Lodge of the Ancient Order of United Workman of Oregon to recover the sum of $2,000 on a certificate of mutual life insurance issued by the defendant to Daniel Montour, plaintiff's father, in which she is named as the beneficiary. The transcript shows that the defendant is a corporation organized under the laws of the State of Oregon, for the purpose, among others, of creating a fund. from which is drawn a stipulated sum upon the death of a qualified member, payable to his beneficiary.   Daniel Montour, on June 15, 1893, became a member of Pig Iron Lodge, No. 135, at Oswego, Oregon, a subordinate lodge under the defendant's exclusive jurisdiction, and received a certificate to the effect that upon his death the defendant would pay his beneficiary the sum of $2,000, provided he complied with all the laws, rules, and regulations of the order.   The plaintiff alleges that her father died December 5, 1896, having duly performed all the conditions imposed upon him by the laws, rules, and regulations of the order, except those waived by the defendant, which waiver is particularly set out; that the defendant, having been duly notified of his death, refused to pay the sum so stipulated,

for which she prays judgment. The answer denies the material allegations of the complaint, and avers that on July 1, 1894, an assessment of one dollar each was duly made upon all the members of the order, which became due and payable from Montour on the twenty-eighth day of that month; that due notice thereof was regularly served upon him, but he neglected to pay the same within three months from that date, and was thereupon suspended; that his application to said Pig Iron Lodge for reinstatement was, on January 17, 1895, duly and regularly rejected by a majority vote, from which decision he never appealed, but acquiesced therein. It is also alleged that, by reason of Montour's failure in these respects, plaintiff is estopped to assert that the action of the lodge in refusing to reinstate her father was irregular, or to deny that defendant has complied with its covenants. A reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a judgment for plaintiff for the sum demanded, and defendant appeals.

REVERSED.

For appellant there was an oral argument by *Messrs. Geo. H. Durham* and *William Smith,* with a brief over the names of *Geo. H. Durham, Wm. M. Colvig* and *Wm. Smith.*

I. The deceased should have exhausted the remedies within the order, failing in which the courts decline to take jurisdiction: *Josich* v. *Austrian Benev. Soc.,* 119 Cal. 74 (51 Pac. 18); *Von Arx* v. *San Francisco Verein,* 113 Cal. 377 (45 Pac. 685); *Lawson* v. *Hewel,* 118 Cal. 613 (50 Pac. 763); *Chamberlain* v. *Lincoln,* 129 Mass. 70; *Lafond* v. *Deems,* 81 N. Y. 507; *Jeane* v. *Grand Lodge,* 86 Me. 434 (30 Atl. 70); *Bauer* v. *Sampson Lodge,* 102 Ind. 267 (1 N. E. 571); *Screwmen's Ben. Soc.* v. *Benson,*

38 OR.—4.

76 Tex. 552 (13 S. W. 379); *German Church* v. *Commonwealth,* 3 Penn. St. 282; *White* v. *Branell,* 2 Daly, 329; *Olery* v. *Brown,* 51 How. Pr. 92; *Hall* v. *Supreme Lodge,* 24 Fed. 450, 453; *Supreme Lodge* v. *Keener,* 6 Tex. Civ. App. 267 (25 S. W. 1084); *Knights of Pythias* v. *Wilson,* 66 Fed. 785 (14 C. C. A. 264); *Connelly* v. *Masonic Mut. Benefit Ass'n.,* 58 Conn. 552 (9 L. R. A. 428, 18 Am. St. Rep. 296, 20 Atl. 671); *Rood* v. *Railway Conductors' Ass'n.,* 31 Fed. 62; *Hembeau* v. *Great Camp,* 101 Mich. 161 (49 L. R. A. 592, 45 Am. St. Rep. 400, 59 N. W. 417); *Canfield* v. *Great Camp,* 87 Mich. 626 (24 Am. St. Rep. 186, 49 N. W. 875, 13 L. R. A. 625); *Karcher* v. *Supreme Lodge,* 137 Mass. 368; *State* v. *Grand Lodge,* 53 N. J. Law, 536 (22 Atl. 63).

II.   The members of a beneficial association are conclusively presumed to know its laws: *Coleman* v. *Knights of Honor,* 18 Mo. App. 189; *Grand Lodge, etc.,* v. *Elsner,* 26 Mo. App. 108; Bacon, Ben. Ass'n., Section 81; *Lyon* v. *Supreme Assembly,* 153 Mass. 83 (26 N. E. 236); *The Brotherhood's Case,* 31 Beavan, 365-375; *Burbank* v. *Society,* 144 Mass. 437 (11 N. E. 691); *McCoy* v. *Church,* 152 Mass. 272 (25 N. E. 289); *Sweet* v. *Citizens' Mut. Relief Soc.,* 78 Me. 541 (7 Atl. 394).

III.   The action of a lodge tribunal, honestly taken, cannot be collaterally reviewed by the civil courts, even where facts exist which, if brought at the proper time to the attention of such tribunal, would have warranted or required a different decision: *Poultney* v. *Bachman,* 31 Hun, 49; *Lafond* v. *Deems,* 81 N. Y. 509; *Jeane* v. *Grand Lodge,* 86 Me. 434 (30 Atl. 70); *Mulroy* v. *Supreme Lodge,* 28 Mo. App. 463; *Blumfeldt* v. *Korschuch,* 43 Ill. App. 434; *Hoeffner* v. *Grand Lodge,* 41 Mo. App. 45; *Glardon* v. *Supreme Lodge,* 50 Mo. App. 45; *Connelly* v. *Masons' Ben. Assoc.,* 58 Conn. 552 (9 L. R. A. 428, 18 Am. St. Rep. 296, 20 Atl. 261);

*Chamberlain* v. *Lincoln,* 129 Mass. 70; *Osceola Tribe* v. *Schmidt,* 57 Md. 98; *Anacosta Tribe* v. *Murbach,* 13 Md. 91 (71 Am. Dec. 625) ; *Schmidt* v. *Abraham Lincoln Lodge,* 84 Ky. 490; *Woolsey* v. *Independent Order,* 61 Iowa, 493 (16 N. W. 576) ; *Screwmen's Ben. Assoc.* v. *Benson,* 76 Tex. 552 (13 S. W. 379).

IV.   Neither the subordinate lodge nor its officers could waive any of the provisions of the contract between Montour and the grand lodge (Montour had no other contract, and it is this which forms the cause of action) to the prejudice of the grand lodge:   Bacon, Benefit Soc. (2 ed.), 434*a,* 388; *Harvey* v. *Grand Lodge,* 50 Mo. App. 472 ; *State* v. *Temperance Soc.* 42 Mo. App. 485; *Supreme Lodge* v. *Keener,* 6 Tex. Civ. App. 267 (25 S. W. 1084) ; *Hale* v. *Ins. Co.,* 6 Gray, 169 (66 Am. Dec. 410) ; *Borgraefe* v. *Knights of Honor,* 22 Mo. App. 127, 141.

V.   Montour should have instituted suit, after exhausting remedies within the order, for decree directing defendant to reinstate him.   This was the only proper remedy : *State* v. *Grand Lodge,* 53 N. J. Law, 536 (22 Atl. 63) ; 9 Am. & Eng. Enc. (2 ed), 500, and note 2.

For respondent there was a brief and an oral argument by *Mr. Harry K. Sargent.*

I.  · The defendant order, so far as it is engaged in the business of life insurance, must be treated in law as a mutual insurance company and its contract an insurance contract : Bacon, Benefit Soc., 52, 184; *Chartrand* v. *Brace,* 16 Colo. 19 (26 Pac. 152, 12 L. R. A. 209) ; *Daniher* v. *Grand Lodge,* 10 Utah, 115 (37 Pac. 245).

II.   Montour's certificate of membership being admitted, the presumption is that he complied with all the rules and regulations of the order until the contrary is shown, and the

burden of showing that he failed to comply with those rules, thereby losing his good standing, is upon the defendant: Bacon, Benefit Soc., Section 414; *Schuefler* v. *Grand Lodge,* 45 Minn. 256 (47 N. W. 799); *Stewart* v. *Grand Lodge,* 100 Tenn. 267 (46 S. W. 579).

III.   Suspension for non-payment of dues does not attach by operation of law, but requires an affirmative action on the part of the lodge: General Laws & Rules of Order, Section 23, p. 89; Bacon, Benefit Soc., 383, 385.

IV.   In making assessments by the appellant upon its members it acts not in a judicial, but in a ministerial, capacity.   Therefore, no presumption can arise in favor of the regularity or legality of its assessments.   *   *   *   And when a society relies upon the failure of one of its members to pay his assessment as a forfeiture of his membership and benefits under its charter, it must show affirmatively that the assessment was made in the manner indicated, otherwise the member cannot be said to be in default:   *Amer. Mut. Aid Society* v. *Helburn,* 85 Ky. 1 (2 S. W. 495, 7 Am. St. Rep. 571); Bacon, Benefit Soc., Section 377; *Stewart* v. *Grand Lodge,* 100 Tenn. 267 (46 S. W. 579); Niblack, Benefit Soc. 280; May, Insurance, Section 557.

V.   An agreement to refer all matters of dispute that may arise under an executory contract would oust the courts of jurisdiction, and therefore such an agreement does not bar a party's remedy by action at law or suit in equity:   *Ball* v. *Doud,* 26 Or. 20; *Daniher* v. *Grand Lodge,* 10 Utah, 221 (37 Pac. 245); *Supreme Council* v. *Forsinger,* 125 Ind. 52 (21 Am. St. Rep. 196, 9 L. R. A. 501, 25 N. E. 129); Bacon, Benefit Soc., 450.

VI.   If a lodge tribunal has no jurisdiction its sentence is a nullity.   The obligation to appeal is not imposed when the judgment is void for want of jurisdiction; Bacon, Benefit

Soc., Sections 104-107; *Supreme Lodge* v. *Eskholme,* 59 N.
J. Law, 255 (35 Atl. 1055, 59 Am. St. Rep. 609) ; *Mulroy* v.
*Supreme Lodge,* 28 Mo. App. 463.

VII.    The law recognizes a distinction between the right
of a member under "the contract of membership," and the
rights of a beneficiary in the benefit fund upon "a contract
for the payment of money" : Niblack, Benefit Soc., §§ 360,
361; *Bauer* v. *Samson Lodge,* 102 Ind. 262 (1 N. E. 571) ;
*Supreme Council* v. *Garrigus,* 104 Ind. 133 (3 N. E. 818,
54 Am. Rep. 298).

VIII.    In actions upon life policies, or certificates of mem-
bership, issued by mutual societies designed to secure the
payment of money to those dependent upon its members, after
the death of such members, courts should construe the rules
and regulations of such societies liberally to effect the benev-
olent objects of their organization, and that doctrine of con-
struction is applicable generally to rulings on questions of
evidence, as well as in other respects : *Supreme Lodge* v.
*Schmidt,* 98 Ind. 374, 381; *Erdman* v. *Mut. Co. Order of
H. S. W.,* 44 Wis. 382; *Ballou* v. *Gile,* 50 Wis. 618 (7
N. E. 561).

MR. JUSTICE MOORE, after making the foregoing state-
ment, delivered the opinion.

The constitution of the Grand Lodge of the Ancient Order
of United Workmen, so far as deemed applicable herein, pro-
vides, in general terms, that the beneficiary fund shall re-
main in the treasuries of the subordinate lodges until called
for, and be composed of assessments made from time to time
upon the members, one of which is paid by each member as
a part of his admission fee.    Whenever such fund in the
grand lodge treasury becomes less than $2,000, the grand
recorder is required, upon the first day of the month, to call
upon the subordinate lodges to forward the beneficiary fund

in their respective treasuries, and at the same time to make an assessment of one dollar upon each member of the order who has received the workman degree previous to the death upon which the assessment is made. Within five days from the receipt of such call, it is incumbent upon the subordinate lodges to forward said fund to the grand recorder. When an assessment is made upon any member for the beneficiary fund, it is his duty to pay the same to the financier of the subordinate lodge on or before the twenty-eighth day of the month in which it is made, and, if he fail to do so, he shall forfeit all the rights and privileges of the order from and after that date, and shall not be reinstated unless within three months from such forfeiture he shall pay all assessments that have been made during that time, including the assessment for the nonpayment of which he was suspended. If such payment is not made within three months from the date of the suspension, as a prerequisite to his reinstatement he must be examined and recommended therefor by the medical examiner of his lodge, and such examination and the member's application must be approved by the medical examiner of the grand lodge, and he must also obtain the consent of his lodge by a majority vote. If a suspended member is not reinstated within six months from the date of his suspension, his benefit certificate shall be annulled, and he shall not be readmitted to membership except upon an original application, and by paying the sum of two dollars into the general fund, and one dollar into the beneficiary fund, and is not above the age of forty-five years. Any member suspended or expelled from the order for any cause shall forfeit all claims on the part of himself or his beneficiary to the beneficiary fund, and to the rights, benefits, and privileges of membership in the order. Any member may appeal to the grand lodge or to the grand master workman from any decision of his lodge, by giving a written notice thereof to the master workman of the subordinate lodge within thirty days,

and filing within sixty days from the date of such decision with the grand master workman or the grand lodge a transcript thereof.

1. It is contended by defendant's counsel that the evidence conclusively shows that Montour was suspended July 28, 1894, by reason of his failure to pay an assessment which became due at that time; that he did not pay the delinquent and accrued assessments until more than three months had elapsed from his suspension; that, having made application for reinstatement within six months from July 28, 1894, the lodge of which he had been a member, by a majority vote, refused its consent thereto, from which action he took no appeal, but acquiesced therein; and hence the court erred in refusing to charge the jury to find for the defendant as requested. Plaintiff's counsel insist, however, that Montour's assessment, which became due July 28, 1894, was paid for him by Pig Iron Lodge; that on November 19, 1894, and within three months from the assessment which became due in August of that year, he paid all assessments and dues; that the subordinate lodge, in rejecting his application, acted without jurisdiction; and that having tendered to the lodge the assessments and dues imposed by the grand lodge, which were refused, he was a member of the order in good standing at the time of his death, and hence no error was committed as alleged.

An examination of the evidence shows that the monthly dues of Pig Iron Lodge are 50 cents, and that the grand recorder, in 1894, made the following assessments in favor of the beneficiary fund, to wit: January 1, No. 1, $1; February 1, Nos. 2 and 3, $2; March 1, No. 4, $1; April 1, No. 5, $1; May 1, Nos. 6 and 7, $2; June 1, No. 8, $1; that Montour during that year paid the following sums to the financier of his lodge, to wit: February 15, assessments Nos. 1, 2, and 3, $3, dues, $1; April 7, No. 4, $1, dues, 50 cents; May 10, Nos. 5 and 6, $2, dues, $1; being delinquent, July 1, $2 on

assessments and 50 cents for dues. The financier of his lodge, however, neglected to give him credit for $1 on account of assessments and 50 cents for dues; thus making it appear that he was delinquent $3 for assessments and $1 for dues. The account of each member with his lodge is balanced the thirtieth of June and thirty-first of December of each year. Montour's account, as corrected, shows he was indebted July 1, 1894, on account of assessments, $2, dues, 50 cents. The grand recorder thereafter made the following assessments: July 1, No. 9, $1; August 1, No. 10, $1; September 1, No. 11, $1; October 1, Nos. 12 and 13, $2; November 1, Nos. 14 and 15, $2; December 1, Nos. 16 and 17, $2; total assessments, including those remaining unpaid July 1, $11, dues, $3.50. Montour made the following payment: November 19, assessments Nos. 7 to 16, inclusive, $10, dues, $3.50; thus leaving him delinquent on account of assessments the sum of $1 when the books were balanced December 31, 1894. His account thereafter is as follows: January 1, 1895, debtor to balance on account of assessment, $1; January 1, assessments Nos. 1 and 2, $2. January 17, 1895, Montour paid $4 on account of assessments, and $1 on account of dues—thus overpaying his account $1 on assessments and 50 cents on dues; which explains the error of the financier in failing to give him credit for these respective amounts, which were paid May 10, 1894.

J. C. Haines, the financier of Pig Iron Lodge, No. 135, sent to the grand recorder, on July 27, 1894, the sum of $51 and a beneficiary return, purporting to be on assessment No. 9, showing that on that day there were 51 workmen in good standing in said lodge; and on August 17, 1894, the sum of $50 and a beneficiary return, purporting to be assessment No. 10, showing that on said day there were 50 members in good standing, and that on August 1, 1894, Dan Montour was suspended for the nonpayment of delinquent assessment No. 6. Haines, appearing as defendant's witness, testified

that Montour's assessments Nos. 6 and 7, May 1, 1894, $2; No. 8, June 1, $1; and No. 9, July 1—were paid to the grand recorder for him by Pig Iron Lodge. This witness, on April 5, 1894, gave Montour a receipt for the payment of assessment No. 4, $1, and dues, 50 cents; and May 10 another receipt, purporting to evidence the payment of assessments Nos. 4 and 5, $2, and dues, $1—thus showing that he collected assessment No. 4 twice, when the receipt should have evidenced the payment of assessments Nos. 5 and 6. Haines also testified that Montour paid $13.50 on November 19, 1894, and that $4 thereof was paid into the general fund of Pig Iron Lodge in satisfaction of the assessments so advanced for him. The financier's beneficiary return shows that Montour was suspended August 1, 1894; but as his default, if it occurred prior thereto, was on the twenty-eighth of the preceding month, it is quite probable that his suspension should have been noted as of that date. It will be remembered that Haines' report to the grand recorder, purporting to be on assessment No. 9, was dated July 27, 1894; and if he made a mistake in the number of the assessment, as is claimed by defendant's counsel, and the report should have been based on assessment No. 8, Montour would have until July 28 to pay assessment No. 8, and hence the report is undoubtedly correct in stating that he was in good standing on the twenty-seventh of that month. Haines further testified that if he had promptly obeyed the call issued by the grand recorder July 1, 1894, upon the subordinate lodges to remit the beneficiary fund in their respective treasuries, he would have sent the amount due, $51, to the grand lodge, July 5, instead of the twenty-seventh of that month; thus showing that the beneficiary return was predicated upon the June assessment No. 8, and that a mistake was made in designating such report as assessment No. 9.

It will be remembered that the constitution of the grand lodge requires that when a subordinate lodge is instituted,

and workmen are initiated therein, each must pay into the
treasury of his lodge for the beneficiary fund a sum equal to
one assessment; and on the first of any month, when this
money is needed to pay a death loss, a call is issued by the
grand recorder, and at the same time an assessment is made
by him to replenish the subordinate treasuries. Within five
days from the receipt of such call the sum so on deposit in
the local treasury must be sent to the grand lodge, and the
assessment made upon each member must be paid on or be-
fore the twenty-eighth of that month. If the grand lodge
were just organized, and subordinate lodges instituted, the
first "call" issued by the grand recorder, necessitated by a
death loss, would be for the sum deposited in the subordinate
treasuries, which must be sent to the grand lodge within five
days from the receipt of the call. The "assessment" issued
at the same time would necessarily be No. 1, and payable on
or before the twenty-eighth day of the month in which it
was made. It will thus be seen that the "call" is always one
number in advance of the "assessment," and Newton Clark,
the grand recorder, testified that it is owing to this fact that
Haines made a mistake in designating the beneficiary return
of July 27, 1894, as predicated upon assessment No. 9, when
it should have been assessment No. 8, which was sent to the
grand lodge in pursuance of call No. 9. Haines admits that
the $51 remitted by him July 27, 1894, should have been sent
on the fifth of that month, thus corroborating the testimony
of the grand recorder, and conclusively showing that the as-
sessments paid by Pig Iron Lodge for Montour were Nos. 6
and 7, $2, for May, 1894, and No. 8, $1, for June of that
year, and not $4, as at first stated by Haines. The testimony
shows that Haines, having forgotten to give Montour credit
for $1 paid May 10, 1894, on account of assessment, and 50
cents on account of dues, paid the same to Mrs. Montour
when his attention was called thereto after Pig Iron Lodge
refused its consent to her husband's reinstatement. Haines'

beneficiary report of August 17, 1894, shows that Montour was suspended on the first of that month, and, in our judgment, there is no testimony whatever tending to controvert this fact.   True, Haines at first testified that the sum of $4 of the money paid by Montour, November 19, 1894, was retained by Pig Iron Lodge; but no records of the lodge having been introduced in evidence to corroborate his testimony in this respect, and he having thereafter admitted that the money remitted by him July 27, 1894, should have been sent on the fifth of that month, no other conclusion is possible than that the lodge paid $3 only on Montour's assessment, and that he was delinquent on the July assessment, when, by his own act, he became suspended on the twenty-eighth of that month.

2.   It is not the practice of this court, in law cases, to comment upon or weigh the testimony of witnesses; the rule being that if there is any evidence, however slight, tending to support the verdict, the judgment will not be disturbed upon appeal:   *Hardwick* v. *State Ins. Co.,* 23 Or. 290 (31 Pac. 656) ; *State* v. *Foot You,* 24 Or. 61 (32 Pac. 1031, 33 Pac. 537) ; *Sperry* v. *Wesco,* 26 Or. 483 (38 Pac. 623).

3.   But, where there is no evidence whatever to prove a material issue, it is the duty of the court, when so requested, to instruct the jury to that effect, and to direct them to find accordingly: *Briscoe* v. *Jones,* 10 Or. 63; *Lee* v. *David,* 11 Mo. 114; *Boland* v. *Missouri Ry. Co.,* 36 Mo. 484; *Callahan* v. *Warne,* 40 Mo. 131.   We think, therefore, that the court erred in failing to give the instruction requested.

4.   If we have erred in this deduction, however, because Montour's certificate of membership created a presumption that he complied with all the laws, rules, and regulations of the order, which could only be overcome by showing that he failed in these respects, the burden of which was imposed upon the defendant (Bacon, Benefit Soc., § 414; *Scheufler* v. *Grand Lodge,* 45 Minn. 256, 47 N. W. 799; *Mulroy* v. *Su-*

*preme Lodge,* 28 Mo. App. 463; *Stewart* v. *Grand Lodge,* 100 Tenn. 267, 46 S. W. 579), and that it was the province of the jury to pass upon this presumption in connection with the other evidence, there is another feature of the case which, in our judgment, is conclusive. The financier's beneficiary report showed that Montour was suspended for nonpayment of an assessment August 1, 1894, after which he made no payment of the delinquent assessments until November 19 of that year; and, having allowed more than three months to elapse after he was suspended, he could not be reinstated on his own motion, but was required to pass the necessary medical examination. After passing such examination and being recommended for reinstatement, the members of Pig Iron Lodge, by a majority vote, refused their consent thereto, from which action he never appealed; and his wife, who testified that she generally paid his assessments, and had authority for doing so, accepted for him a return of the greater part of the money which he paid November 19, 1894, and January 17, 1895, thereby acquiescing in the decision of the subordinate lodge.

In *Jeane* v. *Grand Lodge,* 86 Me. 434 (30 Atl. 70), the plaintiff's husband, having been admitted as a member of a subordinate lodge, was expelled from the order for having made a false statement or answer in his application for membership, from which action of the lodge he never appealed to the governing body, but acquiesced therein by accepting the money which he had paid. Upon his death, his beneficiary, claiming that the expulsion was irregular and void, instituted an action to recover the sum stipulated in his certificate of membership; and it was held that members of a beneficial association must exhaust the remedies given them by the rules of the society, before applying to the courts of law for relief. In *Supreme Lodge* v. *Wilson,* 14 C. C. A. 264 (66 Fed. 785), the husband of the defendant in error having become a member of the order of the Endowment Rank of the Knights of Pythias, a certificate was issued to him, in which

his wife was designated as the beneficiary.   He was sus-
pended from the society, however, for misconduct, from
which decision he took no appeal to the supreme lodge.   After
his death his wife brought an action to recover the sum spec-
ified in the certificate, and it was held that, her husband hav-
ing ceased to be a member of the society in good standing,
and not having availed himself of the remedies provided by
the rules of the order, no recovery could be had.   In *Karcher*
v. *Supreme Lodge,* 137 Mass. 368, the plaintiff's husband be-
came a member of that order, receiving a certificate in which
his wife was named as the beneficiary.   He was suspended
from the order for the nonpayment of an assessment, and
from this action took no appeal to the supreme governing
lodge, and, having died, his widow commenced an action to
recover the sum specified in the said certificate, and it was
held that the action could not be maintained.

It was argued by plaintiff's counsel that if it be admitted
that Pig Iron Lodge only paid the sum of three dollars to the
grand lodge on account of Montour's assessment for May
and June, 1894, the one dollar which he paid Haines for an
assessment, and for which he received no credit on the books
of the subordinate lodge, should have been applied in pay-
ment of the July, 1894, assessment, and, this being so, he
was not in default three months when he paid the amount
due.   The right of a debtor at or prior to the time of making
a payment, to direct the application thereof, and the corre-
sponding duty of the creditor to obey such direction, are well
established: *Trullinger* v. *Kofoed,* 7 Or. 228 (33 Am. Rep.
228).   The receipt which Montour secured May 10, 1894,
evidencing the payment of one dollar on account of an assess-
ment, must be construed as a direction on his part to apply
the money so paid in the particular manner specified: *Stewart*
v. *Keith,* 12 Pa. St. 238. And this sum should therefore have
been credited on assessment No. 6.   But, notwithstanding the
omission, said assessment was paid for Montour by the

lodge in pursuance of a section of its by-laws, as follows: "The master workman and recorder are hereby authorized to draw from the general fund, on the fourth stated meeting of each month, a sum sufficient to pay all delinquent assessments. Brothers whose assessments are thus paid shall be required to pay the same on or before the fourth stated meeting of the following month, together with the additional sum of ten cents, but in no case shall the lodge pay delinquent assessments of any brother whose assessments for the previous month may remain unpaid as provided in this section." Montour's failure to repay the sum so advanced did not render him liable to suspension; for a decision of the grand lodge, then in force, is to the effect that a lodge which voluntarily pays the assessment of a brother cannot suspend him for nonpayment to the lodge, the repayment being left to his sense of duty. The statement in the financial report that Montour was suspended for the nonpayment of assessment No. 6 is therefore incorrect.

If it be assumed that Haines was the agent of Pig Iron Lodge in collecting the assessments from its members, so that a payment to him was equivalent to a payment to his principal, and that the latter was liable to the grand lodge for the default or neglect of its agent, Haines' failure to give Montour credit for the payment of assessment No. 6 was cured by the subordinate lodge in remitting that sum to the grand lodge. The lodge faithfully performed the duty imposed by its by-laws, by remitting to the grand lodge Montour's assessment No. 7, which became due May 28, 1894, upon his neglect to pay the same. These payments were the full measure of Montour's rights under the rules of the order, and, notwithstanding he had not repaid assessment No. 7, his lodge, in violation of the section of its by-laws hereinbefore adverted to, also paid for him assessment No. 8, which became due June 28, 1894. He was therefore not injured in any manner by Haines' failure to give him credit for the one

dollar which he paid, and this money, never having gone into the treasury of the subordinate or grand lodge, should not have been applied in payment of assessment No. 8, which became due July 28, 1894.   True, the beneficial report for August of that year states that he was suspended for the non-payment of assessment No. 6, but we do not think that the error in this respect is material.   The evidence shows that about November 19, 1894, Montour insisted that he was a member of the order in good standing.   But, inasmuch as he thereafter signed an application for reinstatement, he thereby admitted that a controversy existed respecting his position in the order; and having submitted this question to the members of the lodge for their determination, and not having appealed from their decision respecting a matter of which the lodge had jurisdiction, he is bound thereby, though the attention of the tribunal may not have been called to the failure of the financier to give him credit for the one dollar so paid.   In *Karcher* v. *Supreme Lodge,* 137 Mass. 368, it was insisted that the plaintiff's husband at the time he was suspended was sick and unable to work, and therefore not liable to suspension, because it was the duty of the lodge of which he was a member to keep him in good standing during his illness.   Mr. Justice FIELD, commenting upon this question in deciding the case, says: "He was suspended by the tribunal which he had chosen to determine the question according to rules to which he assented in becoming a member, and he received notice of the proceedings.   The action of this tribunal, according to its rules, on a question which it had authority to decide, honestly taken, after the requisite notice to him, cannot be collaterally reviewed in this suit, on the ground that facts existed which, if brought to the notice of the tribunal, would have warranted or required a different decision."   Montour having been examined and recommended for reinstatement, and having due notice of the meeting of the lodge at which action was to be taken on his application,

and being present thereat, except when the vote was taken, he was estopped from objecting to the regularity of the proceedings until he had exhausted the remedies prescribed by the order: *Fischer* v. *Raab,* 57 How. Prac. 87.   Plaintiff, being in privity with her father respecting this contract with the defendant, is bound by the obligation which estopped him (8 Enc. Pl. & Prac. 6) ; and, the evidence of such estoppel being uncontradicted, the court erred, in our judgment, in refusing to give the instruction requested.

5.   It is insisted by plaintiff's counsel that the defendant is not prejudiced by the judgment rendered herein, because it failed to offer any evidence tending to show that the assessment of July, 1894, was made by proper authority, on account of a death loss, and in the manner prescribed by the constitution and laws of the order.   Whatever the rule may be in this respect, we think the point contended for is without merit; for the defendant, having called Newton Clark, its grand recorder, as a witness, asked him to "state whose duty it is to levy assessments as occasion therefor occurs, and to give notice to the subordinate lodges and their members of such assessments."   An objection thereto having been interposed by plaintiff's counsel, the court inquired of him: "Do you concede that the power exists in the grand recorder to do that, under the stipulation of the evidence filed here?" To which he replied: "Yes, your honor."   Clark testified, without objection, that he made assessment No. 9 July 2, 1894, and mailed written notices thereof to the recorder and financier of Pig Iron Lodge, No. 135, showing the date of the death, and the number and names of persons on account of whose death the assessment was levied.   We think the admission of plaintiff's counsel respecting the power of the grand recorder to make an assessment, and his failure to object to the testimony concerning the time and manner of making the same, was an admission of all the substantive facts which authorized the assessment, the requisite proof

of which was duly made. It follows that the judgment is reversed, and the cause remanded for such further proceedings as may be necessary, not inconsistent with this opinion.

<div align="right">REVERSED.</div>

<div align="center">

Decided 18 February, 1901.