# FREIDA MARCUS and Others v. NATIONAL COUNCIL OF KNIGHTS AND LADIES OF SECURITY.[1]

October 10, 1913.

Nos. 18,170—(258).

**Expulsion from fraternal insurance order — evidence.**

The laws of a fraternal beneficiary insurance order provide that misstatement as to age in the application for membership is an offense against the order and ground for expulsion; that a member accused of such offense is to be tried by the executive committee of the order; that the decision upon such trial is conclusive unless appealed; and specify the mode of procedure for both trial and appeal. *Held:*

(1) The laws of the order are reasonable and valid as to offense, penalty and procedure.

(2) That it conclusively appeared that the member, under whom plaintiffs claim as beneficiaries, was duly charged with the offense mentioned, cited before the executive committee of defendant for trial, personally appeared, had trial, was found guilty and expelled, unless he accepted an option to pay assessments at a rate corresponding to the age of entry as found by the committee.

(3) Not having appealed from such decision, errors or irregularities therein are of no avail, the rule being that unless a member of an order, such as this, first exhausts the remedy afforded by the laws of the order for maintaining his rights he cannot have recourse to the courts.

(4) In this case the evidence conclusively shows conduct subsequent to knowledge of the decision of the committee, which amounted to an aban-

[1] Reported in 143 N. W. 265.

Note.—On the question of the conclusiveness of decisions of tribunals of benevolent societies, see notes in 49 L.R.A. 353 and 2 L.R.A.(N.S.) 672.

123 M.—10.

donment of the membership and acquiescence in the decision so that plaintiffs are now precluded from asserting that the person under whom they claim died a member of defendant in good standing.

Action in the district court for Ramsey county by the children of Samuel Schlesinger to recover $2,000 upon defendant's certificate of insurance upon the life of their father. The case was tried before Hallam, J., who directed a verdict in favor of defendant. From an order denying plaintiffs' motion for a new trial, they appealed. Affirmed.

*A. J. Hertz* and *James E. Markham,* for appellants.
*Harvey E. Hall* and *William G. White,* for respondent.

HOLT, J.

The defendant is an incorporated fraternal beneficiary insurance order, its subordinate lodges being called councils. Those who become members of a council receive a membership certificate from the defendant under which, in consideration of specified dues and assessments, the beneficiaries named in the certificate become entitled to receive from defendant a certain sum of money in the event of the member's death while in good standing. The application for membership, the certificate and the laws of the order constitute the contract and govern the rights and duties between the members and the order. In case a member of one council accuses a member of another council of wrongdoing by filing a complaint with the president of the order, the latter, if he deems the accusation of sufficient importance, is required to refer such accusation to the national executive committee for trial. This committee has power to hear and determine all charges against members for violations of the laws of the order and render judgment and inflict punishment. Within 30 days after the decision of the committee is rendered the accused, if dissatisfied therewith, has the right to appeal to the order itself, the national council. The decision is final unless an appeal is thus taken. The order meets biennially, but provisions are made for the hearing of appeals at special meetings. The membership certificate stipulates that statements in the application for membership are

warranties, and the laws of the order provide that false statement as to age in the application is an offense punishable with expulsion or cancelation of the certificate. The laws also provide that dues and assessments must be paid monthly and nonpayment ipso facto forfeits all rights under the certificate.

In 1904 Samuel Schlesinger applied for membership in Herzel Council No. 1188, Minneapolis, a subordinate lodge of defendant. He was admitted and defendant issued to him the membership, or beneficiary, certificate upon which this suit is brought by plaintiffs, the beneficiaries therein named. His age as stated in the application was 47 years and the monthly assessment required to be paid at that entrance age was $2.55. He paid his assessments up to and including March, 1910. In that month an investigation started involving the methods practiced in Herzel Council 1188 to secure members, with the result that early in April, 1910, the charter of the council was revoked, and the members who were not expelled from the order were required to obtain transfer cards to some other council or else pay future assessments to the defendant direct. A complaint in writing was, about the same time, filed with defendant's president against Schlesinger by a member of another council, accusing Schlesinger of violation of the laws of the order, specifying several particulars among which was the one that he had made misstatements as to age in procuring his certificate. The accusation was referred to the national executive committee by the president, and by it Schlesinger was duly served with a copy of the complaint and with a citation to appear before the committee on the sixth day of April, 1910, at a designated place in Minneapolis, Minnesota, and answer the charges preferred against him, and show cause why his beneficiary certificate should not be canceled and annulled. At the appointed time Schlesinger appeared before the committee, and testimony was taken upon the charges preferred against him, and the committee determined that Schlesinger had made misstatements as to age in his application; that instead of being 47 years, as stated therein, he was then not less than 54 years of age; and the conclusion was that he could remain a member no longer, unless he agreed

to pay assessments, beginning with May, 1910, on the basis of attained age of 54 years at the time of entry; to wit: $5.85 per month.

By letter of April 22, 1910, Schlesinger was notified of the action of the committee. He was also advised that, if he did not accept the option given, a formal order would be made expelling him, and that, since the council of which he had been a member had been dissolved, it was necessary to issue a transfer card to some other council if he desired to retain his certificate upon the terms proposed. He was requested to let the committee know at once whether the proposition was accepted, so that the card might be issued and his April assessment paid within that month. On April 27 Schlesinger answered by letter asking why such action was taken. On May 5 the committee in reply reiterates the statements in its former communication and concludes thus: "The question for you to decide is whether or not you prefer to remain a member of the society and pay the new rate or to drop your membership, or have the executive committee expel you for misrepresentation. Kindly advise me at once what your wishes are in the matter." Schlesinger was absolutely silent after this. He neither tendered nor paid further assessments. There is some shadowy testimony of a payment for six months in advance claimed to have been made, in March prior to the accusation, by a relative; but it is to be noted that, in the committee's letter of April 22, it is suggested that the assessment for that month was still unpaid, and in Schlesinger's answer of the twenty-seventh it is not intimated that the suggestion is out of place. However that may be, it appears conclusively that no assessments or dues accruing during the seven months next prior to his death, which occurred May 21, 1911, were either paid or tendered.

This action was brought by the beneficiaries named in Schlesinger's membership certificate. The answer set up several defenses, one of which was: That Schlesinger had violated the laws of the order in making false statements as to age in his application for membership; that he had been duly accused of the offense; that the president of the order had referred the accusation to the executive committee for trial; that Schlesinger was duly cited in for trial, the trial had, and a decision made that Schlesinger had misrepre-

sented his age, and that he would be expelled unless he agreed to thereafter pay assessments at a rate as of 54 years of age at entry; that he refused to accept said rerating; that he did not appeal from the decision, although the appellate tribunal met within two months thereafter; and that he never thereafter paid or tendered any assessments, but acquiesced in the action of expulsion, stated that he would pay no further assessments and abandoned his membership. The reply to this defense was merely a general denial, and an allegation that the by-laws set up in the answer did not apply to the contract of insurance, and that such by-laws were unreasonable and of no binding force. It is to be borne in mind that there is no allegation of fraud or deception which prevented Schlesinger from having a fair trial, or that he was denied the opportunity of making a defense, or that any undue advantage was taken of him at any stage of the proceeding. Upon the trial the court directed a verdict for defendant. Plaintiffs appeal from the order denying their motion for a new trial.

The other defenses need not be noticed, for we consider the one above set forth is to such an extent sustained by the undisputed facts that it is decisive of the appeal. Where, as in this case, the amount of the assessments is based upon the age of the member at the time of entry, it is plain that misstatement as to age in the application for membership is good ground for cancelation of the membership certificate, or, which is the same thing, expulsion. It is a material misrepresentation as a matter of law. Taylor v. Grand Lodge A. O. U. W. 96 Minn. 441, 105 N. W. 408, 3 L.R.A.(N.S.) 114. Under the laws of the order misstatement of age in obtaining membership is an offense against the order, which is triable under its laws, and is punishable with expulsion. The consequence of expulsion is forfeiture of all rights under the membership or beneficiary certificate.

It is generally held that, when an order of this kind, in accordance with its laws, proceeds to discipline or expel a member, courts will not interfere therewith if the law under which the action was taken is reasonable and the tribunal which acted had jurisdiction of the offense and proceeded regularly. 2 Bacon, Benefit Societies, (3d.

ed.) § 442. Connelly v. Masonic, 58 Conn. 552, 20 Atl. 671, 9 L.R.A. 428, 18 Am. St. 296. As above stated the reasonableness and validity of the law of the order, making misstatement of age in the application for membership an offense punishable by expulsion, is beyond doubt. Neither can there be any serious question raised concerning the legality and reasonableness of the procedure provided by the laws of the order. The accused is cited in before a competent tribunal; he is furnished with written specification of the charges; he is accorded a hearing; he has the right to appeal, and testimony is taken which, in case of appeal, is transmitted to the appellate tribunal. The contention is that the evidence raised a question of fact as to whether a trial was had, and further that no expulsion resulted because no final judgment was rendered so declaring, and none from which an appeal could be taken. These are, in our opinion, the only questions not entirely free from doubt.

The testimony relied on as tending to disprove a trial is that of one Winthrop, but even on his version Schlesinger was called before the committee and asked questions as to age. He does state that no other witness testified in the case, but Schlesinger's very appearance may have been the most convincing testimony as to his being more than 54 years old at the time of entry. And Winthrop does not now intimate that such appearance was not ample evidence from which to make the finding as to age of entry, or that Schlesinger was denied the right to offer all the testimony he might desire upon the charges made against him. We do not think the testimony of this man would be sufficient to support a finding that Schlesinger did not have a trial in face of the positive testimony of two persons that witnesses were heard and the testimony preserved.

Was there a decision rendered by the committee which terminated Schlesinger's rights? It is not to be expected that the procedure of a trial in an organization like defendant shall conform to that of a court of law, or that decisions shall be given in the form or with the precision that obtains in judicial proceedings. It is not contemplated that controversies arising within the order shall be tried and determined by lawyers or under their exclusive guidance. Form must yield to substance. And while the record kept by the executive

committee was not offered in evidence, the testimony is undisputed that after the trial was had the committee deliberated and arrived at a decision. It determined that Schlesinger had committed the offense charged against him, and that he could remain a member no longer unless he signified an intention to avail himself of the option given. The entry of any order after his failing to accept the offer was a mere formality. To persons other than the technical lawyer it would be plain that the committee had concluded the trial and had given its final decision.

Assume that the committee was not authorized to render the decision it did make; that it had power only to expel unconditionally for the offense of which it found Schlesinger guilty, still it does not follow that the expulsion can be successfully attacked in the courts. The committee under the laws of the order had power to render judgment; such judgment though erroneous binds the member unless appealed. He had so agreed. Courts, with few exceptions, sustain such agreements, and hold that a member, or those who claim rights through a member, must first exhaust the remedy given in the order before bringing suit, provided such remedy is reasonable. There can be no contention that the laws of the defendant order were unreasonable either as to trial before the executive committee or as to appeals from its decision. In Jeane v. Grand Lodge, 86 Me. 434, 436, 30 Atl. 70, it is stated: "It is said that the proceedings leading to his expulsion were irregular and do not conform to the rules of the order. Suppose they were; the laws of the order give an appeal to a supreme tribunal constituted for the very purpose of correcting such errors, and they provide that each member failing to take such appeal 'shall be deemed to have thereby agreed to abide by such decision or enforcement of the laws or rules of the order.' The deceased failed to take any appeal from his expulsion and thereby must be held to have acquiesced in the decision. * * * Moreover, it is just and reasonable to hold, that when a member of such society has a remedy, under the rules of his order, from any supposed erroneous action injurious to himself, that he should first exhaust that remedy before appealing to the courts for relief." See to the same effect, Lindahl v. Supreme Court I. O. F. 100 Minn.

87, 110 N. W. 358, 117 Am. St. 666, 8 L.R.A.(N.S.) 916; Karcher
v. Supreme Lodge, 137 Mass. 368; King v. Wynema Council (Del.
Super.) 78 Atl. 845; Modern Woodmen v. Taylor, 67 Kan. 369, 71
Pac. 806; Beeman v. Supreme Lodge, 215 Pa. St. 627, 64 Atl. 792;
Weigand v. Fraternities, 97 Md. 443, 55 Atl. 530; Cotter v. Grand
Lodge, 23 Mont. 82, 57 Pac. 650; Montour v. Grand Lodge, 38 Ore.
47, 62 Pac. 524, 29 Cyc. 201–205.   Note to Ryan v. Cudahy, 49
L.R.A. 353, and note to Lindahl v. Supreme Court I. O. F. 8 L.R.A.
(N.S.) 916.

But if there be any doubt upon the proposition that the decision
of the committee was sufficiently formal and final so as to require
Schlesinger to appeal therefrom or be precluded thereby, we never-
theless think the evidence clearly shows that he abandoned his mem-
bership, and by conduct acquiesced in the decision of the committee,
so that plaintiffs are now estopped from asserting that Schlesinger
died a member in good standing.   He knew that he was accused of a
violation of his contract and the laws of the order which, if proven,
meant expulsion and made void the certificate sued on; he appeared
at the trial; he knew that a decision was reached that he was guilty
and must be expelled, unless he accepted the offer to pay assessments
at the rate the committee found his age to be at the time of entry;
he knew that the defendant would consider that he had decided to
abandon his membership, unless he availed himself of the option
given, or took some action to assert his rights or perform his
duties as a member.   But, except for his letter asking for the reason
of his expulsion, he remained silent and passive, he offered to pay no
dues, or assessments, or fulfil any of the obligations imposed on
members.   Not only that, but the testimony is undisputed that
shortly after the trial and, presumably, after knowledge of the de-
cision, Schlesinger stated to defendant's attorney who called on him
with reference to this insurance that "he wouldn't pay any further as-
sessments and he would drop his insurance" unless his sons-in-law
would pay the assessments—"it was up to them."   In view of the
situation after notice of the decision and of defendant's position in the
matter, it was the duty of Schlesinger to take some action to assert
his membership.   Not having so done, but having on the contrary

stated that he would pay no further assessments and would drop his insurance, he and those claiming through him are estopped from asserting rights based on membership in good standing.

Complaint is made of errors of law occurring at the trial, but the objections then made were palpably without merit and need not be noticed here.

We think that upon the one defense pleaded the evidence was such that the direction to return a verdict for defendant was right.

Order affirmed.

HALLAM, J., having tried the case, did not sit.