# W. S. RIGLER and Others v. NATIONAL COUNCIL OF KNIGHTS AND LADIES OF SECURITY.[1]

December 24, 1914.

Nos. 18,910—(143).

**Benefit society — expulsion of member.**

    1. The laws of defendant society prescribing the grounds upon which members may be expelled and the procedure to be followed in the trial of charges against them are sufficient and valid.   Such laws provide for a trial before the national executive committee, and for an appeal from the decision of that committee to the national council, and a judgment lawfully rendered by such committee is final and conclusive, unless an appeal be taken therefrom.

[1] Reported in 150 N. W. 178.

Note.—Upon the conclusiveness of a determination by tribunals of association, see note in 49 L.R.A. 363, 372.   And as to the conclusiveness of a decision of the tribunal of a mutual benefit society expelling or suspending member, see note in 52 L.R.A.(N.S.) 806.

Same.

2. The committee having rendered a judgment of expulsion from which no appeal was taken, such judgment can be attacked, in this action, only upon the ground that it is void for failure to accord the assured such a trial as the laws of the society secured to her, and the record in this case will not justify a finding to that effect.

Action in the district court for Ramsey county to recover $2,000 upon defendant's certificate of insurance. The case was tried before Olin B. Lewis, J., and a jury which returned a verdict for $1,898.51 in favor of plaintiffs. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*William G. White,* for appellant.

*A. J. Hertz* and *James E. Markham,* for respondents.

TAYLOR, C.

This suit is brought to recover the amount of a benefit certificate issued by defendant, a fraternal beneficiary association, to Mariem Rigler. Plaintiffs had a verdict and defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

The defendant association had a number of local councils, as the subordinate lodges are termed, in the cities of Minneapolis and St. Paul. Prior to March, 1910, it caused an investigation to be made to ascertain whether the laws and regulations of the order were being violated by certain of these councils, and whether benefit certificates had been fraudulently procured by members not entitled thereto. As a result of this investigation, charges were preferred against Zion Council No. 951 and against 56 members of that council, one of whom was Mariem Rigler, and also against some of the other councils and against many members of such other councils.

In the proceedings against the individual members, a general form of complaint was prepared, charging a violation of the laws of the order and containing six specifications of wrongful conduct. Most of these specifications charged misrepresentation or conceal-

ment as to age, health or family history of the accused member. Harvey E. Hall, a member of Imperial Council No. 1,000, had conducted the investigation, and he made a separate complaint against each accused member by inserting the name of such member in one of the forms above mentioned and signing and presenting it to the national president. The laws of the order provided for a trial upon such charges before the national executive committee, and for an appeal from the decision of such committee to the national council itself. They also provided for notice to the accused member of the charges against him and of the time and the place of trial. Due notice was given to Mariem Rigler to appear before the national executive committee, at Richmond Hall in the city of Minneapolis, at ten o'clock a. m. on April 7, 1910, and answer the charges against her, and show cause, if any there were, why her benefit certificate should not be cancelled for the reasons set forth in such charges. The hearing upon the charges against Zion Council No. 951, and upon the charges against all other members of that council was also set for the same time and place. On April 6, 1910, the national executive committee met in Minneapolis and considered the charges against Herzel Council No. 1188 and the members of that council; on April 7, 1910, the committee considered the charges against Zion Council No. 951, and against the members of that council; and on April 8, 1910, the committee went to St. Paul and considered the charges against the members of a council located in that city. As a result of these hearings, the national executive committee dissolved both Zion Council and Herzel Council and forfeited their charters; the committee also expelled, or attempted to expel, a large number of the members of each of these councils. The following cases in this court have grown out of such action on the part of the committee. Marcus v. National Council of Knights and Ladies of Security, 123 Minn. 145, 143 N. W. 265; Kulberg v. National Council of Knights and Ladies of Security, 124 Minn. 437, 145 N. W. 120; Marcus v. National Council of Knights and Ladies of Security, 127 Minn. 196, 149 N. W. 197.

In the case first cited, it was held, upon the facts shown by the record therein, that the expulsion was valid and effective; in the

case next cited, it was held, upon the different state of facts shown in that case, that whether the assured had been afforded such a trial as the laws of the order contemplated was a question for the jury, and that the attempted expulsion was void and of no effect; in the case last cited, although notice of expulsion had been given the assured, no attempt was made to prove that she had in fact been expelled.

The above cases explain sufficiently the nature and purpose of the society and the manner in which it was conducted. They also determine that the charges made against the accused members were sufficient, if established, to justify their expulsion. They also determine that the procedure provided by the laws of the order for the trial of members accused of such offenses was proper, sufficient and valid; and that where a trial before the national executive committee, regular and lawful when measured by such laws, resulted in the expulsion of a member, such member must appeal therefrom to the national council or the decision of the committee will become final and conclusive. It is undisputed that Mariem Rigler was given due notice of the trial and of the charges against her; that the committee met at the time and place designated; that she appeared and was heard before the committee; that the committee rendered a formal judgment expelling her from the order and canceling her benefit certificate and gave her due notice thereof; and that she never appealed therefrom.

No appeal having been taken from the judgment of expulsion, it can be attacked in this action only upon the ground that it is void. If it is void, it is a nullity and may be disregarded. If it is not void, it conclusively determines that Mariem Rigler was expelled from the order.

Plaintiff's attack upon the validity of the judgment is based upon the following assertions: That Mariem Rigler was not afforded a fair opportunity to make her defense; that there was no evidence tending to prove the truth of the charges against her; and that the proceeding was instituted and conducted in bad faith for the purpose of wrongfully ousting the accused members.

The hall where the hearings were held consisted of a large room

with a smaller room adjoining it and a door between them. The crowd gathered in the large room, and the committee held its sessions in the smaller room. As the several cases were taken up, the name of the accused was called at the door between the two rooms. If he appeared, he entered the room where the committee were in session, was questioned, then retired, and another was called. While there is some dispute as to just what occurred before the committee, the officials insisting that each member called before them was asked whether he had anything further to present and others contradicting this, there is no evidence that any accused member was denied the privilege of presenting any evidence he desired, or of having any person he wished appear for him. Both Mariem Rigler and her husband appeared before the committee. Whether they came in together or separately is not entirely clear. She was nearly blind and was apparently conducted into the room by some one. She produced no witnesses, designated no one to represent her, and tendered no evidence other than the answers she made to the questions propounded to her. The only request that she is claimed to have made was that she be given time to procure a birth certificate from Roumania, her native country. The witnesses for defendant deny that any such request was made and, although her testimony was taken by a reporter in shorthand, no such request appears therein. But if it were made and denied, the refusal of such a continuance would not affect the validity of the proceedings.

In the Kulberg case an unfavorable inference was drawn from the failure of defendant to produce the transcript of the testimony taken before the committee, and the decision of the committee was apparently based in part upon evidence taken in the absence of the accused and at a time and place of which he had no notice. In the instant case the transcript of the testimony taken before the committee was produced at the trial for such use as plaintiffs chose to make of it, and defendant showed affirmatively that all the evidence before the committee was submitted while the accused was present. Plaintiffs offered the transcript in evidence. It consists of 28 questions and answers, some of which contradict, in unimportant particulars, some of the statements contained in the original application

for insurance. The books of Zion Council were also put in evidence before the committee.

The decisions are conflicting as to the extent to which courts may examine the evidence submitted to such tribunals for the purpose of determining the validity of the judgments rendered by them. The New York court in a *mandamus* proceeding involving the expulsion of a member of the New York Produce Exchange said:

"The question for the court is not whether, passing upon the evidence as *res nova,* it would have reached the same conclusion as that of the board of managers, or whether the conclusion was reasonable or unreasonable, but simply and wholly whether the case was so bare of evidence to sustain the decision that no honest mind could reach the conclusion that the relator's conduct was 'inconsistent with just and equitable principles of trade.'" People v. New York Produce Exchange, 149 N. Y. 401, at page 414, 44 N. E. 84. In this case the accused member had no right of appeal to a higher tribunal within the association.

The courts generally hold, in effect, that where the laws of a voluntary association provide for an appeal from one tribunal to another within the association and such appeal was not taken, the courts will make no examination of the evidence presented to the subordinate tribunal of the association, but will merely inquire whether the charge, if established, justified the judgment rendered, and whether such tribunal had acquired jurisdiction and had been given the power to render such judgment. 29 Cyc. 205, and cases there cited; Marcus v. National Council of Knights and Ladies of Security, 123 Minn. 145, 143 N. W. 265; Kulberg v. National Council of Knights and Ladies of Security, 124 Minn. 437, 145 N. W. 120. The absence of evidence to support the decision may be taken into consideration in determining whether the tribunal acted in bad faith for the purpose of fraudulently ousting the accused member.

In the present case Mariem Rigler appeared before the committee and told them she was then 57 years of age, which accorded with the statement in her application for the benefit certificate. She also

told them that she had eight children and that the oldest was 42 years of age. She also stated that she was married at fourteen and had five children before she was twenty. As said in the Marcus case, her "very appearance may have been the most convincing testimony" that she had misrepresented her age or the state of her health. The record does not disclose what, if any, information was contained in the books of Zion Council offered in evidence before the committee. We cannot say that the evidence wholly fails to sustain the decision of the committee.

The claim that the assured was not afforded a fair opportunity to make her defense is apparently based upon the fact that the door between the large room and the room occupied by the committee was kept closed, and the statement of the witness Juster, that he asked the president of the society, before the hearing began, whether he could go in and hear the proceedings, and was told that only members would be admitted. There is no evidence that any accused member was in any wise hindered or prevented from adducing any evidence that he desired, or from having any one present to assist him that he wished.

A careful consideration of the entire record leads to the conclusion that there is no evidence which will justify a finding that Mariem Rigler was deprived of a fair opportunity to make her defense. Neither will the record justify a finding that there was no evidence to sustain the decision of the national executive committee, nor a finding that the proceedings before that committee were instituted or conducted in bad faith. The case falls within the rule applied in the first Marcus case and plaintiffs are not entitled to recover.

The order appealed from is reversed with directions to enter judgment for defendant notwithstanding the verdict.