Argued February 12, decided February 25, 1908.

## ANDERSON v. GRIFFITH.

[93 Pac. 934.]

USURY—DEFENSE—NECESSITY OF PLEA.

1. Plaintiff sued on a note for $2,025, alleging a balance of $625.95 due, with interest, etc. Two of the defendants answered, admitting the execution of the note, and alleging that in addition to the indorsements, admitted they had paid $500, which plaintiff had neglected to credit, and prior to the action had tendered $350.20 in full payment of the debt, when but $160.89 was due. The reply denied the new matter pleaded, and on the trial plaintiff proved that the $500 had been paid without any application, and that plaintiff had applied it to a debt of that amount which defendants had agreed to pay as extra compensation for plaintiff's agreement to extend payment until certain mining claims, mortgaged to secure the debt, had been sold. *Held*, that defendants were entitled to presume that the only question involved was the payment of the $500 as alleged, so that they had no opportunity to plead usury, prior to the raising of the issue at the trial, and were therefore not barred from such defense, because it was not pleaded.

PAYMENT—APPLICATION—NATURE OF DEBT.

2. Where a debtor owes more than one debt to a creditor, the creditor is bound to follow the debtor's directions as to the application of payments, but in the absence of any direction, may apply the payment to any lawful demand, excluding a spurious or a pretended claim, an immoral one, a gambling contract, or usury.

USURY—AMOUNT OF INTEREST.

3. Under Section 4595, B. & C. Comp., allowing a charge of 10 per cent interest for the use of money, a payment of $500 for the use of $2,025 for 2 years, 5 months, and 19 days, would not have been usury; but, the entire money not having been retained for that length of time, the charge became usurious.

INTEREST—MATURITY OF DEBT—RESCISSION OF USURIOUS CONTRACT.

4. Defendants agreed to pay plaintiff $2,025 on or before five years from March 19, 1897, secured by a mortgage on certain mining claims, providing that on a sale of the premises the debt should be at once payable. The claims were sold August 25, 1903, when the obligation matured, and thereafter bore interest at 6 per cent. On March 19, 1902, it was orally agreed that in consideration of $500 extra compensation, the mortgage debt might be deferred until the claims were sold. Plaintiff sued for a balance of $625.95, having applied a payment of $500 on the extension agreement. Defendants deposited $160.89, which they permitted plaintiff to recover. *Held*, that defendants' concession that the sum deposited was due to plaintiff, was a rescission of the usurious agreement to pay $500 for plaintiff's forbearance, and thereby entitled plaintiff to interest at 6 per cent from March 19, 1902, when the note matured, instead of August 25, 1903, when the mining claims were sold.

TENDER—NONACCEPTANCE—KEEPING TENDER GOOD.

5. Where defendants made a written offer to pay plaintiff more than was due him, but only deposited with the clerk a sum less than plaintiff was entitled to recover, the tender was not kept good.

From Lane: LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by A. J. Anderson against William Griffith, J. W. Reed, and the Oregon Securities Co., a

corporation, to foreclose a mortgage. It is alleged in the complaint, "that on March 19, 1897, Griffith and Reed gave to the plaintiff their promissory note for $2,025, due on or before five years, without interest, and to secure the payment thereof they executed to him a mortgage of an undivided one-fourth interest in three mining claims. That the mortgage provided that, in case of a sale of the premises within the time specified, the debt should at once become payable. That the claims were sold August 25, 1903, when the obligation matured, and the debt thereafter bore interest at the rate of 6 per cent per year. That the following payments, and no others, have been made, to wit: August 26, 1903, $1,000; September 4, 1904, $250; and September 27, 1905, $250; thus leaving due $625.95, with interest thereon since the latter date. That $65 is a reasonable sum as attorney's fees, as provided for in the note. That the interest of the Oregon Securities Co. in the premises is subject to plaintiff's lien thereon.

The defendants Griffith and Reed, answering, admit that their co-defendant is a corporation; that they executed the mortgage mentioned; that the premises were sold August 25, 1903; that the debt thereafter bore interest at the legal rate, and that they made the payments stated, but deny all the other allegations of the complaint. For a separate defense they aver that, in addition to the indorsements specified, they paid on account of the note, November 13, 1905, $500, which sum the plaintiff unlawfully neglected to credit thereon; that prior to the commencement of this suit they made a written tender to him of $350.20 in full payment of the debt, when there was due thereon only $160.89, which latter sum they deposited with the clerk of the court for him.

The reply denies the allegations of new matter in the answer, and, the cause having been tried, the defendants were awarded their costs and disbursements, and the

suit was dismissed, from which decree the plaintiff appeals.                                            MODIFIED.

For appellant there was a brief over the names of *Cardwell & Watson,* with an oral argument by *Mr. William W. Cardwell.*

For respondent there was a brief over the names of *Thompson & Hardy,* with an oral argument by *Mr. Charles A. Hardy.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. The testimony given at the trial shows that on March 19, 1897, the plaintiff was the owner of the specified interest in the several mining claims, which property he at that time sold and conveyed to Griffith and Reed for $2,025, taking as security therefor a mortgage on the premises; that about March 19, 1902, when the note evidencing the debt matured, it was orally agreed that in consideration of $500 extra compensation, the payment of the mortgage debt might be deferred until the mining claims could be sold; that a sale thereof was effected August 25, 1903, and there was paid on account of the purchase price, $3,000, of which sum the plaintiff received and credited on the note, $1,000, and thereafter obtained the money evidenced by the other indorsements appearing on the negotiable instrument; that on November 13, 1905, the defendants sent a check for $500 to the plaintiff, without indicating how the money represented thereby should be credited, whereupon he applied it in discharging their promise to pay for the indulgence. Griffith and Reed severally testified, and the court found, though denied by the plaintiff, that the stipulation to pay the extra remuneration was in lieu of interest; that the plaintiff agreed to wait for his money until it was received from the sale of the premises, and that at the time this suit was instituted the entire purchase price had not been paid.

It is contended by plaintiff's counsel that, as Griffith and Reed were indebted on the promissory note and on the oral agreement to pay for the delay, when they sent the $500, without directions as to what account should be credited therewith, the plaintiff was entitled to apply the money in discharging their obligation for the postponement, and that the question of usury is not involved herein, because it is not made an issue by the pleadings. It is maintained by the defendants' counsel, however, that an agreement is usurious when a party seeks to obtain for a forbearance to enforce a legal remedy a greater compensation than is allowed by law for the use of money; that a creditor, in the absence of directions, cannot apply money received upon an illegal claim; and that the court properly devoted the sum specified in the check as a payment on account of the principal. The editors of Encyclopedia of Pleading and Practice, in discussing the necessity of pleading usury as a defense, say:

"As a general rule, both at law and in equity, where usury does not appear on the face of the plaintiff's pleadings, a defendant who desires to avail himself of that defense must plead it, or in some way give notice thereof to the adverse party; and this rule will be departed from only in exceptional cases, as, for instance, where the defendant has had no opportunity to plead": 22 Enc. Pl. & Pr. 421.

In the case at bar the defense interposed is based on the alleged payment of $500 made by the defendants November 13, 1905, for which sum they assert proper credit was not given; and the allegation is denied in the reply. From the issue thus framed, the defendants had the right to suppose that the only question involved was the payment of the sum alleged. At the trial, however, the plaintiff admitted he received the money, but applied it on another account. The defendants, therefore, had no opportunity to plead usury; but, as an issue on that question was made by the evidence, it was proper

for the court, as intimated in *Sujette* v. *Wilson,* 13 Or. 514-518 (11 Pac. 267), to consider the matter.

2. The right of a debtor, at or prior to making a payment, to direct the application thereof to a particular debt, where he owes more than one, and the corresponding duty of a creditor to obey the command, are recognized and fully established: *Montour* v. *Grand Lodge,* 38 Or. 47 (62 Pac. 524). In the absence of such direction, the creditor may apply the money or property received to any lawful demand he has against the debtor: *Trullinger* v. *Kofoed,* 7 Or. 228 (33 Am. Rep. 708). In *Greene* v. *Tyler,* 39 Pa. 361, the court, in speaking of the application of a payment, says: "It could not be made to a spurious or pretended claim; nor to an immoral one, like a gambling contract; nor to usury, for that is forbidden by statute." To the same effect, see *Real Estate Trust Co.* v. *Keech,* 7 Hun (N. Y.), 253; *Turner* v. *Turner,* 80 Va. 379; *Stone* v. *Talbot,* 4 Wis. 442-468.

3. Ten per cent interest per annum is the highest rate allowed by law in this state for the use of money: B. & C. Comp. § 4595. The payment of $500 for the use of $2,025 for 2 years, 5 months, and 19 days would have been no more than 10 per cent interest for that time, and therefore not usurious. It will be remembered that the mortgage note matured March 19, 1902, and that the mining claims were sold August 25, 1903. For this extension of 1 year, 5 months, and 6 days $500 was appropriated by the plaintiff, who, after the sale of the premises, charged 6 per cent interest per annum for the use of the money. The plaintiff could have received $500 for the use of the money for that time, and if he had thereafter permitted the defendants to retain the entire sum for 2 years, 7 months, and 2 days at 6 per cent per annum, making in all 4 years and 8 days, the interest received would not have exceeded 10 per cent per annum. The entire money was not retained for that

length of time, and hence the sum sought to be recovered for the use of it would have been usurious.

4. Permitting the plaintiff to recover the sum deposited is tantamount to a recission of the agreement to pay $500 for the forbearance. In such cases the parties should be placed in *statu quo,* thereby entitling the plaintiff to interest at 6 per cent per annum from March 19, 1902, when the note matured, instead of August 25, 1903, when the mining claims were sold. Computing the interest at the legal rate from the maturity of the note, and deducting the payments as they were severally made, there remained due from the defendants to the plaintiff, February 13, 1906, when this suit was instituted, $349.95, instead of the sum as found by the lower court.

5. It will be remembered that the defendants made a written offer to pay the plaintiff $350.20, or 25 cents more than was due him; but they did not keep their offer good by depositing that sum with the clerk, and left with that officer only $160.89.

The decree will therefore be modified, so as to allow the plaintiff the sum of $349.95; but, as he refused that offer when it was made, we believe he is only entitled to the costs and disbursements incurred in this court, which are awarded him.                                MODIFIED.