Argued February 10, affirmed March 2, rehearing denied March 23, 1915.

## MEIER & FRANK CO. *v*. MITLEHNER.*

(146 Pac. 796.)

**Appeal and Error—Harmless Error—Admission of Evidence.**

1. Where there was testimony, in an action, for the price of goods sold, that defendant's wife had acknowledged receipt of the goods, since this established a *prima facie* case, no error was committed in admitting in evidence, irrespective of any question as to their admissibility, the original sale slips of plaintiff's credit department, purporting to show that goods had been delivered to defendant's wife.

---

*The question of the husband's liability for necessaries furnished his wife while living with him is discussed in notes in 65 L. R. A. 529 and 47 L. R. A. (N. S.) 279.  Reporter.

Husband and Wife—Family Expenses—Liability of Husband—Notice.

2.    A husband was liable for household supplies furnished his wife where he clothed her with ostensible authority to purchase by paying previously incurred bills, whether or not, at one of the times when he had separated from her, he had notified seller not to extend credit to her.

[As to agency of wife to act for husband and charge him for necessaries, see note in 98 Am. St. Rep. 627. As to implied agency of wife for husband, see note in Ann. Cas. 1913C, 879. As to liabilities and rights of wives when living separate and apart from their husbands, see note in 36 Am. Rep. 764.]

Principal and Agent—Proof of Agency—Agent's Statement.

3.    Where the only proof offered as to the agency of plaintiff's alleged secretary was the agent's declaration, made at the time defendant gave certain notice, the agency of the secretary was not legally established, and the notice could not be imputed to the plaintiff.

Principal and Agent—Evidence of Agency—Burden of Proof.

4.    Where defendant sought to escape liability for goods furnished to his wife on his credit by plaintiff, by reason of notice previously given to plaintiff or its officers to furnish her no more goods, the plaintiff had the burden of proof to prove the agency of the agent he gave notice to.

Husband and Wife—Family Expenses—Ratification of Wife's Agency After Separation.

5.    Where defendant, who had separated from his wife and notified plaintiff to supply her no more household goods on his credit, returned home and furnished her money to pay bills despite the alleged notice, the jury might reasonably infer a ratification of her incurring of the debt.

Appeal and Error—Review—Discretion of Court—Direction of Special Findings.

6.    The refusal to direct special findings by the court is a matter of discretion reviewable only in case of abuse.

Payment—Application of Payments.

7.    In the absence of direction from the debtor, the matter of the application of payments is with the creditor, who may elect to reduce any one of several claims or any part of one.

[As to application of payments, see notes in 13 Am. Dec. 505; 14 Am. Dec. 694; 96 Am. St. Rep. 44. As to time when creditor may make application, see note in Ann. Cas. 1913E, 895.]

Husband and Wife—Family Expenses—Statute.

8.    In an action against husband and wife for goods sold for use of the family under Section 7039, L. O. L., rendering both jointly and severally liable for family expenses, education of children, etc., it need not be proved, in order to recover at all, that every article furnished was of a domestic character, but deductions will be made for those that were not.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2.    Statement by MR. JUSTICE MOORE.

This is an action by the Meier & Frank Company against Albert M. Mitlehner and Jane Doe Mitlehner, his wife, to recover money.    The complaint alleges in effect that the plaintiff is a corporation, and the defendants are and at all the times stated were husband and wife, and as such constituted a family; that between March 27, 1913, and May 22d of that year the plaintiff, at the special instance and request of the defendants, sold and delivered to them, to be used in their family as necessaries, goods, wares and merchandise of the reasonable value and agreed price of $298.78; that there are no offsets or credits against such demand, except $100.78, thereby leaving due the plaintiff $198, for which judgment was demanded, with interest from May 22, 1913.    The husband alone, answering, substantially denied that any goods, wares or merchandise were sold or delivered by the plaintiff to the defendants, or that any sum was due from them on account thereof.    For a further defense he alleged in effect that he supplied his family with all necessaries, and that, if the plaintiff sold or delivered to his wife any goods, they did not constitute family expenses. For a second defense he averred that in the year 1910 he notified the plaintiff not to sell or deliver to his wife any goods, wares or merchandise on his credit. Another defense is set forth, but the facts so alleged are deemed immaterial herein.    The allegations of new matter in the answer were put in issue by the reply, and the cause, having been tried, resulted in a judgment for the plaintiff in the sum demanded, and the defendant Albert M. Mitlehner appeals.

AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Westbrook & Westbrook,* with an oral argument by *Mr. H. S. Westbrook.*

For respondent there was a brief over the names of *Messrs. Joseph & Hanley* and *Mr. B. H. Goldstein* with an oral argument by *Mr. Goldstein.*

Opinion by MR. CHIEF JUSTICE MOORE.

It is contended that, without having called as witnesses any of the persons who made the original memoranda, errors were committed in receiving in evidence, over objection and exception, original sale slips, showing goods, wares and merchandise alleged to have been sold and delivered by the plaintiff to the defendants, as stated in the complaint. From an examination of these slips, it appears that the persons making sales, who are indicated by specified numbers, made pencil memoranda showing the articles sold, the value of each, their total worth, the name of the purchaser, whether upon credit or otherwise, together with other data, and that a carbon copy thereof was delivered to the purchaser, while the original was retained, and an entry thereof made in the books. W. E. Kiernan testified that he was in charge of the plaintiff's credit department; that he had general supervision of the books of his employer, but was not personally in charge thereof. He identified the memoranda exhibited to him as involved herein, saying: "These are the original charge checks of this account." "They were taken from the original files." Refering to the goods, wares and merchandise noted on the charge checks, and alluding to the defendant's wife, the witness said: "I know they were delivered to her because Mrs. Mitlehner told me herself." He further testified that a statement of the

account was mailed to her monthly, saying: "She admitted the correctness of the bills. I talked to her after the bills became due."

1. It is unnecessary to consider whether or not a proper foundation was laid for the introduction in evidence of the original sale slips or charge checks, since the testimony referred to shows that the defendant's wife admitted to the plaintiff's agent that the goods, wares and merchandise alleged to have been sold were delivered to her, and that the bills rendered therefor were correct. This proof was sufficient to establish a *prima facie* case, and no error was committed in receiving the evidence complained of, or in refusing to grant a judgment of nonsuit predicated on the same ground.

With regard to an alleged visit to the plaintiff's department store in September, 1910, the defendant Albert M. Mitlehner testified as follows:

"I went up to Julius Meier's office, and I saw Mr. Beckman. I had known him for quite a while. He is Julius Meier's secretary. I wanted to know was Julius Meier in, and he said he was not in just now. And I said, 'Well, I come down to see whether he is extending any more credit to my wife'; and he said, 'No, I don't think they are, because I have already told him like that.' He had already told Julius Meier to discontinue giving her credit, because she was getting so much. And he went to the credit department with me and told my name, and I wanted to know how much my wife owed Meier & Frank.

"Q. What was his name?

"A. I don't know. He brought a book, and it was $320 or $325, in that neighborhood, and I said: 'I can't afford to pay any more. You better not let her have any more. She owes all over [Portland], and I can't afford it very well.' Then I left."

On cross-examination Mr. Mitlehner said he was not very well acquainted with Mr. Beckman, whom, in September, 1910, he supposed to be about 22 or 24 years old.

"Q. How did you know Mr. Beckman was Mr. Meier's secretary?

"A. That is what he told me."

This witness further testified that he was married in January, 1909, and finally left his wife June 2, 1913. In answer to the question as to whether or not he was living with her in September, 1910, when he asserts that he notified Mr. Beckman not to extend to her any more credit on his account, he said:

"I don't remember whether I was living with her or not. I left so many times. We separated so many times. I could not tell whether I was living with her at that time or not.

"Q. You knew that Meier & Frank was supplying her with goods?

"A. I thought she paid with the money she received from me."

Mrs. Mitlehner testified that her husband was informed she had an account at the plaintiff's store after September, 1910, and knew bills therefore were received monthly by her; that she notified him of the amount thereof, and he gave her money with which to pay such obligations.

Based on this testimony, the court instructed the jury as follows:

"Although a husband supplies his wife with articles necessary to her station in life, he may render himself liable for articles purchased upon his credit, if he clothes her with an ostensible agency by an apparent authority to contract for goods for his credit by paying such bills previously incurred."

An exception having been taken to this part of the charge, it is contended that an error was committed in giving such instruction.

The statute regulating liability for household outlays reads:

"The expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or of either of them, and in relation thereto they may be sued jointly or separately": Section 7039, L. O. L.

In *Devendorf* v. *Emerson,* 66 Iowa, 698 (24 N. W. 515), family supplies were sold and delivered to the wife of the defendant against his written protest, and it was held that, as he had no account with the plaintiff, he was not liable to them for the value of the merchandise so sold. That case proceeds upon the theory that the husband, as the head of the family, had the undoubted right to determine from what merchant the family supplies should be secured, and not that by giving a written notice could he prevent his wife from procuring sustenance. There is much force in the dissenting opinion of Mr. Justice ADAMS in that case, wherein he says:

"The plaintiff furnished goods which were consumed in the defendant's family as family supplies, and if the defendant had the benefit of them, I think he ought to pay for them. He might, of course, forbid merchants to furnish family supplies (not strictly necessaries) on credit, and in cases where he should do so he would be justified in returning the goods and repudiating the purchase. But, where the goods are retained and consumed in his family, I think that he becomes liable to pay for them by implied contract arising under the statute, if not at common law."

2. Assuming, without deciding, that a notice by a husband to a merchant not to extend credit to his wife

on his account for family expenses is availing and will exempt him from liability for the value of the merchandise delivered to her, though she may suffer for the want thereof, it is believed that the instruction complained of is a proper expression of the law applicable to the facts of this case. Whether or not the defendant's notice was given at a time when he had separated from his wife is deemed unimportant, for it is fair to suppose that when he returned to their home, and was informed of the plaintiff's charges for supplies furnished to her, and gave money with which to pay the demands, he thereby held her out as having sufficient authority to incur debts on his account: *Connell* v. *McLoughlin,* 28 Or. 230 (42 Pac. 218); *Harrisburg Lumber Co.* v. *Washburn,* 29 Or. 150 (44 Pac. 390); *Baker* v. *Seaweard,* 63 Or. 350 (127 Pac. 961.)

3, 4. An exception having been taken, it is maintained that the court erred in charging the jury as follows:

"If notice not to extend credit is relied upon as a defense, Mr. Mitlehner must prove that he gave actual notice to the plaintiff, or its officers, not to extend any further credit to his wife. Notice to someone who is not in authority, and of which the plaintiff has no actual notice, is insufficient to exonerate Mr. Mitlehner from his liability. The burden of proof is upon Mr. Mitlehner."

In 21 Am. & Eng. Ency. Law (2 ed.), 589, it is said:

"The burden of proving notice rests upon the party asserting its existence."

A principal is chargeable with notice of every fact coming to the knowledge of his agent when the information obtained by the latter is received in connection with the particular business in which the agent is employed: Wade, Notice, § 672. This author at section

674 of the text-book mentioned, in discussing the effect of notice, says:

"For whether the agent be one exercising general or special authority, it is quite certain that his agency must have some direct connection with the matter, with reference to which notice is given."

No evidence of Mr. Beckman's authority having been received, except the assertion imputed to him that he was secretary to the plaintiff's manager, such proof was inadequate to establish agency by means of which notice could be charged to the principal: *Connel* v. *McLoughlin,* 28 Or. 230 (42 Pac. 218); *North Pacific Lbr. Co.* v. *Willamette Mill Co.,* 29 Or. 219 (44 Pac. 286); *Wicktorwitz* v. *Farmers' Ins. Co.,* 31 Or. 569 (51 Pac. 75.)

No error was committed in giving the instruction challenged.

5. An exception having been taken, it is argued that the court erred in charging the jury as follows:

"Even though actual notice may have been given, yet, if you find that, subsequent to said notice, Mr. Mitlehner knew of the purchases made by his wife, against his will, and paid for same, you may find from such facts that Mr. Mitlehner ratified the purchases, and is liable therefor. Ratification may be presumed from his subsequent conduct, as, for instance, acquiescence and assent, or failure to complain."

In view of the testimony to which reference has been made, the jury might reasonably have inferred that after Mr. Mitlehner returned to his home, and the family difficulty had been temporarily settled, he, with full knowledge of the sales of the goods by the plaintiff to his wife, furnished the money with which to pay the bills therefor, thereby ratiying and becoming liable for the debts which she thus incurred: *Hahn* v. *Guard-*

*tan Assurance Co.,* 23 Or. 576 (32 Pac. 683, 37 Am. St. Rep. 709); *Jameson* v. *Coldwell,* 25 Or. 199 (35 Pac. 245); *Connell* v. *McLoughlin,* 28 Or. 230 (42 Pac. 218); *Rumble* v. *Cummings,* 52 Or. 203 (95 Pac. 1111); *Sorenson* v. *Smith,* 65 Or. 78 (129 Pac. 757, 131 Pac. 1022, Ann. Cas. 1915A, 1127, 51 L. R. A. (N. S.) 612). No error was committed in this respect.

6. It is maintained that an error was committed in denying a request for the jury to render special verdicts as to whether or not the defendants paid the plaintiff, on account, sums of money as follows: March 27, 1913, $53.71; May 1, 1913, $39.91. The refusal of a court to direct a special finding is a matter of discretion which will not be reviewed, except in case of abuse: *Swift* v. *Mulkey,* 14 Or. 59 (12 Pac. 76); *Knahtla* v. *Oregon Short Line Ry. Co.,* 21 Or. 136 (27 Pac. 91); *Wild* v. *Oregon Short Line Ry. Co.,* 21 Or. 159 (27 Pac. 954); *White* v. *White,* 34 Or. 141 (50 Pac. 801, 55 Pac. 645). The court's discretion was not abused in this instance.

7. An exception having been taken to the court's refusal, it is argued that an error was committed in failing to instruct the jury to the effect that if they should find that the defendant was entitled to a credit of $53.71 on March 27, 1913, and $39.91 on May 1st of that year, as appeared from the plaintiff's statement of debits and credits, they should deduct these items from any verdict they might find in the plaintiff's favor. From the evidence submitted by the plaintiff, it appears that on April 25, 1911, there was due it from the defendant, on account of goods previously sold, a balance of $46.08. Between that date and May 22, 1913, the plaintiff sold and delivered to the defendant goods, wares and merchandise of the reasonable value of $777.18, making a total debit of $823.26. Between the

dates mentioned the defendants returned goods which they had received and paid money on account of the demand, amounting to $625.26, thereby leaving due $198 as of May 26, 1913. It further appears that between March 27, 1913, and May 22d of that year, the plaintiff sold and delivered to the defendants, as a part of the items making up such sum of $777.18, goods, wares and merchandise of the reasonable value of $298.78, as alleged in the complaint, and forming the basis of the cause of action. It is also manifest, from a statement of the account received in evidence, that in the year 1913 the defendants were allowed the following credits: March 27th, $53.71; April 25th, $5.52; May 1st, $39.91; and May 22d, $95.46—amounting to $194.40. Instead of deducting this sum from $298.78, the value of the goods alleged in the complaint to have been sold and delivered to the defendants, the items of $53.71 and $39.91 were applied in discharging a balance of $93.62 on the account extending from April 25, 1911, as hereinbefore stated, to and including March 24, 1913. When a debtor owes a creditor more than one obligation he may, at or before making a payment, direct upon which debt the credit should be applied, but, if he give no instructions in respect to the matter, the creditor may apply the payment on account of any demand he may have against him: *Trullinger* v. *Kofoed,* 7 Or. 228 (33 Am. Rep. 708); *Montour* v. *Grand Lodge,* 38 Or. 47 (62 Pac. 524); *Anderson* v. *Griffith,* 51 Or. 116 (93 Pac. 934.)

The plaintiff had against the defendants but one account, which extended from April 25, 1911, to May 22, 1913, and amounted to $823.26. By applying the credits of $53.71 and $39.91 with previous payments, a settlement was assumed as of March 27, 1913. Taking this date as the commencement of a new account, the

plaintiff sold and delivered to the defendants goods, wares and merchandise of the reasonable value of $298.78, as alleged in the complaint. Crediting on account of that sum the items of $5.32 and $95.46, as hereinbefore stated, a balance of $198 remained, for which judgment was demanded. This was a correct statement of the account, and, the defendants having received credit for all payments made on account thereof, no error was committed in refusing to charge as requested.

8. An instruction requested by defendant's counsel defines, with some degree of care, family expenses, and states that unless the jury should find that each article named in Exhibit "A," which was made a part of the complaint, "was a family expense, and was purchased as such and brought into and used by the family as such, then your verdict must be for the defendant." The exhibit thus referred to is not incorporated in or made a part of the transcript before us. It is believed possible, however, definitely to determine the schedule of articles alleged to have been sold and delivered to the defendants. The sale slips contain a memorandum of the goods in question, and, from an examination of such evidence, it appears that most of the merchandise sold and delivered consists of dress goods, shoes, stockings, undergarments, sheets, pillowslips, table linen, etc., which articles are unmistakably included in the term "family expenses": Section 7039, L. O. L.; *Phipps* v. *Kelly,* 12 Or. 213 (6 Pac. 707); *Dood* v. *St. John,* 22 Or. 250 (29 Pac. 618, 15 L. R. A. 717.) The instruction thus refused to be given did not point out some particular item of merchandise as not embraced within the class specified, but sought to have the jury instructed that, unless they found each article constituted a family expense, a verdict should be returned for the defend-

ant.   That is to say, if the entire account contained a single item, of insignificant value, which did not come strictly within the designation of family expenses, the whole account should be disregarded, instead of eliminating the worth of the article inveighed against. Such is not the law, and no error was committed in refusing to charge as requested.   The court also refused to give other requested instructions, but it is believed that no error was thereby committed.

It follows from these considerations that the judgment should be affirmed; and it is so ordered.

AFFIRMED.   REHEARING DENIED.

MR. JUSTICE BEAN, MR. JUSTICE HARRIS and MR. JUSTICE McBRIDE concur.