Argued June 11; affirmed June 30, 1931.

BLOCK *v.* LOVE ET AL.

(1 P. (2d) 588)

*G. E. Hamaker,* of Portland, for appellant.

*John A. Jeffrey,* of Portland, for respondent Moselle.

*James B. Finnigan,* of Portland (Lewis, Lewis & Finnigan, of Portland, on the brief), for respondent Block.

CAMPBELL, J.   This suit was filed September 25, 1929, to foreclose a mechanic's lien.   It is admitted that plaintiff is and was legally engaged in the plumbing business under the assumed name of Alberta Plumbing Company, in Portland, Oregon; that he performed labor and furnished materials as an original contractor on a building known as 454 Buffalo street, Portland, on lot 18, block 5, El Tovar, an addition in and to the city of Portland; that his contract was for the complete installation of all the plumbing in said building for the sum of $320.50; that he began work on his contract previous to the eighth day of July, 1927, at which time defendant Otis E. Love, with whom he had the contract, was the owner of the lot and building; that the whole of said lot is necessary to the convenient use and occupation of the building; that without fault on his part

he did not complete his contract because the owner abandoned the construction of the building; that the last work actually performed, or material furnished on the contract, was not later than March, 1928; that he filed his lien August 5, 1929, and paid $1.25 for recording it. It is also admitted that defendant, the Niadi Company, is and was a duly organized corporation, and loaned the defendant Otis E. Love the sum of $1,800, which loan was secured by a mortgage on the lot on which plaintiff seeks to foreclose his lien; that said mortgage was recorded July 9, 1927, and after the construction of the building was begun; that the mortgagor defaulted and said mortgage was duly foreclosed by a suit and the property sold, under execution on said foreclosure, to the plaintiff therein, the Niadi Company, at sheriff's sale and afterwards the sale was confirmed on July 18, 1929; that a sheriff's deed was executed on July 31, 1930, to the Niadi Company; that neither plaintiff herein nor the defendant A. T. Moselle, the other lien claimant and cross-complainant was made a party to the mortgage foreclosure suit; that cross-complainant A. T. Moselle was the painting contractor on the same building. The facts as to his lien which he seeks to foreclose are materially different from those that apply to plaintiff.

All defendants, except A. T. Moselle, the Niadi Company and Otis E. Love, defaulted. The trial court foreclosed both liens and entered a decree accordingly. Defendants Niadi Company and Otis E. Love appeal.

It is undisputed that defendant Otis E. Love was engaged in having constructed buildings for sale during the year 1927, and that plaintiff herein was the plumbing contractor on five or more of said buildings during that year. Included in the number of said build-

ings was one on an adjoining lot to lot 18, block 5, El Tovar. Notice of lien, as filed, alleged "that Otis E. Love was the reputed owner of said building." The notice of intention to foreclose this lien was duly sent ·to Otis E. Love more than seven days before the filing of the instant suit. The defendant Otis E. Love was the record owner of the property until July 31, 1930. The building had reached that stage of completion that plaintiff in the performance of his contract was enabled to and did what is known as "roughing in" of ·the necessary plumbing, and that he could not further proceed with his contract until certain other construction work; over which he had no control, was completed. In the early spring of 1928, defendant Otis E. Love became financially embarrassed and was unable to proceed.

■ This record presents no new question of law. The law on each proposition advanced has been well settled by this court. The only questions in dispute are ones of fact. The main dispute is the date of abandonment of construction by the owner.

"In order to constitute a permanent abandonment of the construction of the building, so that the same would take the place of the completion mentioned in the statutes, there should be cessation of operation and an intent on the part of the owner and contractor to cease operations permanently, or at least for an indefinite period, or some fair notice to or knowledge of the abandonment by a lien claimant, either actual or implied": *Stark-Davis Co. v. Fellows,* 129 Or. 281 (277 P. 110, 64 A. L. R. 271); *Tait and Co. v. Stryker,* 117 Or. 338 (243 P. 104); *Eastern-Western Lumber Co. v. Williams,* 129 Or. 1 (276 P. 257); *Pac. Coast Steel Co. v. Uhrbrand,* 130 Or. 225 (279 P. 848).

Plaintiff could file no lien until his contract had been completed.

"It shall be the duty of every original contractor, within sixty days after the completion of his contract * * * to file * * * a claim * * *": Oregon Code 1930, § 51-105.

Permanent abandonment of construction of the building on the part of the owner, or cancellation of lien claimant's contract is equivalent to completion as affecting the time of filing the notice of lien. The circumstances strongly tend to show that defendant Otis E. Love had hoped and intended to complete his contract until the Niadi Company foreclosed their mortgage and the property was sold. It was during the period of foreclosure that he gave the plaintiff the information that he could proceed no further.

■ The evidence shows that actual work ceased about April 1, 1928, the owner at that time being short of funds to further proceed. He took up other employment, but his evidence is rather hazy as to the time he gave up the intention of completing the building. He took no steps to release plaintiff from the contract. The claim is made in the brief and the argument of appellant that he left the state of Oregon and took up his residence in California, but the evidence does not so show.

"Q. Where did you go, Mr. Love?

"A. During the summer I was working the western part of Oregon in this vicinity; and through in Washington, and then went east of the mountains in August to Walla Walla and worked that territory through there, then eastern Oregon and over into Idaho.

"Q. Did you during that time meet Mr. Moselle or Mr. Block?

"A. No; I did not.

"Q. Or talk to them about it?

"A. No; I had no communication with them at all.

"Q. After you came back in the spring, April you say, of 1929, did you meet either of these gentlemen?

"A. Mr. Block called me up once.

"Q. Called you up once?

"A. Yes, sir.

"Q. And on that occasion you had a conversation that you related to the court here. Is that right?

"A. Yes.

"Q. Now I want to know whether you ever told Mr. Block after you left here that you intended to finish up this building?

"A. No; I told Mr. Block my circumstances, and of course he knew them as far as that was concerned.

"Q. Well, what did you tell him your circumstances were?

"A. I told him I was unable to go ahead.

"Q. I am asking you whether or not you told him that you had to drop it and abandon it.

"A. Yes.

"Q. And did you tell him that was what you were doing?

"A. Yes.

"The court: Q. The spring of 1929?"

The plaintiff's testimony on the same incident:

"Q. And did you have a final talk with him before you filed your claim of lien?

"A. Yes; I did.

"Q. About how long before you filed this claim?

"A. About twenty days, something like that.

"Q. What conversation did you have with him then?

"A. Well, I went to him and asked him if he was going to complete this house, or get it in shape so I could finish it up and get my money out of it, and he said he didn't see any way out of it now; he was up against it and didn't have any money.

"Q. Did you tell him what you were going to do?

"A. Well, I told him that if he could not do anything, why I would want him to understand that I terminated my contract and I had to file a lien to collect what I had on the job.

"Q. What did he say to that?

"A. Well, he said I had to do it; that is all he could do. He could not do anything, he said.

"Q. You say that was within a period of twenty days prior to the time you filed your lien here?

"A. Yes; it was in the early part of July, 1929.

"Q. Had he at any time prior to that told you he wasn't going ahead with the work?

"A. No; no. Whenever I seen him before, he was always going to finish up as soon as he got enough money together."

The trial judge, who saw and heard the witnesses giving their testimony, found that the incident above referred to occurred in the early part of July, 1929, and that was the time that the real abandonment of construction took place, and we will not disturb his finding.

The question of a certain payment is in dispute. It arises out of these facts: It appears that W. L. Graham & Co. was assisting defendant Love to finance the construction of the two buildings, on Buffalo street, heretofore referred to. On August 3, 1927, he made a check payable to Alberta Plumbing Company for the sum of $300. On this check there appears the endorsement, "Acct. Otis E. Love, 458-459 E Buffalo, L 18 B 5 El Tovar." Defendant claims that this sum was to be applied, $150 on contract on house number 458 and $150 on contract on house number 459. Neither of the numbers given is the correct number of either house, but we do not deem the mistake material. Plaintiff cashed the check. There is a dispute as to whether

this endorsement was on the check at the time it was cashed. From our point of view this is immaterial. It is admitted that at the time the check was delivered there was no further instruction given as to its application.

"When a debtor owes a creditor more than one obligation he may, at or before making a payment, direct upon which debt the credit should be applied, but, if he give no instructions in respect to the matter, the creditor may apply the payment on account of any demand he may have against him": *Meier & Frank Co. v. Mitlehner,* 75 Or. 331 (146 P. 796); *Gile Grocery Co. v. Lachmund,* 75 Or. 122 (146 P. 519); *Trullinger v. Kofoed,* 7 Or. 228 (33 Am. Rep. 708); *Anderson v. Griffith,* 51 Or. 116 (93 P. 934).

One might well conclude from the endorsement that the application might be made to either account, or if we construe it as being a direction to apply on both then there is no direction as to what part of the $300 should be applied on either. The evidence shows that the account on which it was applied, the contract had been completed, and there was at least $320 due on which at that time a notice of lien could have been filed. On the account in litigation there was $253 due, but this sum was not lienable at the time.

■ There is some question raised of the priority, on the lot itself, between the Niadi Company mortgage and plaintiff's lien. This question is clearly covered by the statute:

"A lien created by this act upon any parcel of land shall be preferred to any lien, mortgage * * *, which may have attached to said land subsequent to the time when the building * * * was commenced * * *; also to any lien, mortgage * * * which was unrecorded at the time when said building * * * was commenced * * *": Oregon Code 1930, 51-103. See other cases cited under this section in the code.

■ In order to recover costs it is necessary for the lien claimant to notify the owner or reputed owner of the property of his intention to foreclose, seven days prior to the commencement of the suit to foreclose such lien. The record clearly shows that such notice was mailed to defendant Otis E. Love and that he was the owner of record at the time the notice was mailed him. This would certainly make him the reputed owner if not the actual owner.

■ The cross-complainant Moselle was also an original contractor on the same job. He had the contract to do the painting for a lump sum of $90. His notice of lien shows on its face that his work was done between September 26, 1927, and October 26, 1927. He did not file his lien notice until May 15, 1929. His evidence shows that he completed his contract about October 26, 1927, and that he was in no way hampered or interfered with in his work by reason of the noncompletion of the building. He testified that he went back on the building more than six months after he had completed his contract and did about two hours work on retouching. Nobody requested him to do this extra work, and at the time he filed his lien it is evident that he did not consider it as part of his contract. Being an original contractor, it was his duty to file his notice of lien within sixty days after the completion of his contract: Oregon Code 1930, 51-105. This he failed to do; so that his lien should not have been foreclosed.

The decree will be affirmed so far as it affects the lien of plaintiff, I. Block, doing business as Alberta Plumbing Company, and reversed as far as the decree foreclosing the lien of defendant and cross-complainant A. T. Moselle is concerned, and a decree entered dismissing the cross-complaint of A. T. Moselle.

BEAN, C. J., BROWN and BELT, JJ., concur.