Argued October 29, 1934; affirmed January 22, 1935

# FATLAND *v.* WENTWORTH & IRWIN, Inc.

(40 P. (2d) 68)

*Will H. Masters,* of Portland, for appellant.

*G. W. Parman* and *D. R. Parker,* both of Condon, for respondent.

RAND, J.  This suit was brought by the plaintiff to enforce a statutory lien for labor and supplies furnished by plaintiff to Loyd S. Angell in the repair of a truck which he had purchased from Wentworth & Irwin, Inc., under a conditional sales contract.  Angell failed to answer the complaint and a personal judgment was taken against him for the amounts prayed for in the complaint.  Wentworth & Irwin, Inc., separately answered, setting up as its sole defense its title to the truck and that Angell had paid plaintiff for the labor and supplies furnished in its repair.

On the trial of the cause, the trial court held that the lien was a valid and subsisting lien and that no pay-

ments had been made thereon, and entered a decree foreclosing the lien and directing that the truck be sold to satisfy the amount claimed to be due under the lien, together with costs and attorney's fees. From this decree, the answering defendant has appealed.

It was conceded by the defendant company that the lien, when filed, was valid, that the items for which it was claimed were lienable, and that the charges made were reasonable. But it was contended that, under the doctrine of the application or, more technically speaking, the appropriation of payments, it was entitled to have applied in satisfaction of the debt secured by the lien certain payments made on an open account by Angell to plaintiff after the filing of the lien. This contention was based upon the admitted fact that plaintiff, while operating a garage and repair shop in Condon, had sold and delivered to Angell various items of merchandise in addition to those for which the lien was claimed and that, both before and after the filing of the lien, Angell had made numerous payments on account, and that all said items of debit and credit were entered by plaintiff in chronological order in one open, current account, and that Angell, in making said payments, had given no specific directions as to how the same were to be applied. Because these items were so entered by plaintiff in one open and current account, defendant contends that the debts for which the payments were made were not separate debts but were a part of an account current between the parties and, since no specific appropriation by either party had been made, all receipts and payments should have been applied in discharge or reduction of the earliest unpaid item on the debit side of the account, and that if that application had been made, these payments were sufficient to pay all charges appearing on said account up to and including the last item secured by the lien and

that, by reason thereof, the lien had been fully satisfied and discharged. It was not disputed, however, that there is still due and owing from Angell to plaintiff on said account over and above the amounts of said payments a small balance in addition to the amount for which the lien was claimed.

The rule contended for by the defendant is a rule applicable to banking or cash accounts where neither party has made any application of payments and the payments had been credited upon an open, current account, and there is no evidence to show that either party intended that they should be applied in the extinguishment or reduction of the amount due. The rule contended for by the defendant, by analogy, has been extended by some courts as applicable to open and current accounts generally and has been applied, in some cases, where the facts are very similar to those involved here. Before deciding whether it would be proper to apply that rule in the instant case, a further reference to the rules generally applicable to the appropriation of payments will first be made.

■ It is a rule of general application upon which this as well as all other courts are agreed: ''That the party paying may direct to what the application is to be made. If he waives his right, the party receiving may select the object of appropriation. If both are silent, the law must decide.'': *Jones v. The United States,* 7 How. 681 (12 L. Ed. 870), and cases cited.

■■ And so it has been settled in this state that: ''When a debtor owes a creditor more than one obligation he may, at or before making a payment, direct upon which debt the credit should be applied, but, if he give no instructions in respect to the matter, the creditor may apply the payment on account of any demand he may have against him.'': *Meier & Frank Co. v. Mitlehner,*

75 Or. 331 (146 P. 796); *Anderson v. Griffith,* 51 Or. 116 (93 P. 934); *Christman v. Salway,* 103 Or. 666 (205 P. 541), and *Block v. Love,* 136 Or. 685 (1 P. (2d) 588). It is also well settled in this state that, in the absence of directions from the debtor, the creditor has the right to apply a payment upon the secured or unsecured account, as he sees fit: *Wolfgang v. Henry Thiele Catering Co.,* 128 Or. 433 (275 P. 33), and *City of Marshfield v. U. S. F. & G. Co.,* 128 Or. 547 (274 P. 503). And where there is an account, the creditor can apply the payment to the unsecured portion of the account: *Gile Grocery Co. v. Lachmund,* 75 Or. 122 (146 P. 519). It also was held that where neither party had made the application, the court may make it and, in doing so, will apply the payment to the first unsecured debt: *Trullinger v. Kofoed,* 7 Or. 228 (33 Am. Rep. 708).

■ Hence, Angell had the right, when making the payments involved here, to direct upon which items of his account the payments were to be applied and had he done so plaintiff would have been compelled to make the application as directed. The payments, however, were indefinite as to the object of appropriation and were made generally and no specific direction was made by Angell as to how they were to be applied. This waiver upon Angell's part left the plaintiff, when he received the payments, free to apply them upon any debt or item of indebtedness which Angell then owed to him regardless of whether the same was secured by lien, or otherwise, if the same was not illegal. In the absence of any implied or express direction from Angell, plaintiff could apply them upon any indebtedness then due him from Angell, as he pleased, and he was not obliged to make an immediate appropriation of them at the time of their receipt. He had a right to apply them upon any particular part of the account at any subse-

quent time, provided that the rights of third persons were not affected by the time when the application was made. If so, the application must be made within a reasonable time.

■ So far as what appears from the evidence, Angell may have been in possession of the truck at the time this suit was commenced. If that is so, under the doctrine announced in the Wolfgang and City of Marshfield cases, supra, plaintiff could have made the appropriation up to the very moment when he commenced the suit to foreclose the lien. Of course, after the repossession of the truck by the answering defendant, if it was repossessed, it would then be too late since the rights of third parties would have then intervened and, if no appropriation had been made at that time, the court would have to make it. In that event it would be the duty of the court, in accordance with the doctrine announced in the foregoing Oregon cases, to apply these payments upon the unsecured account, and such we believe is the doctrine generally applied in such cases by substantially all the courts.

That the right would continue until the commencement of the suit, if no previous appropriation had been made of the payments and if the rights of third parties were not affected thereby, is supported by Benjamin on Sale, (7th Ed.), by Judge Kennedy, K. C., p. 841, where the author says:

"The cases already cited also establish the rule that whenever a debtor makes a payment without appropriating it expressly or by implication he thereby yields to his creditor the right of election in his turn. And this right he may exercise up to the very last moment, and he is not bound to declare his election in express terms. He may declare it by bringing an action, or even in the witness-box, or in any way that makes his meaning and intention plain.

"What is 'the last moment' depends upon the circumstances of each case. It may be stated generally that the creditor retains his right of election so long as circumstances do not exist showing that he has already in effect elected, or rendering it inequitable that he should make his election."

██ So it seems clear to us that plaintiff had the right to make the appropriation at the very time this suit was commenced and he would be entitled to prevail in this suit unless, as contended by the defendant, these payments were applied at the time of their receipt to extinguish the earliest items of the account appearing upon the debit side thereof by the mere fact that they were entered by plaintiff in this open, current account.

The rule contended for was announced by Sir Wm. Grant, Master of the Rolls, in Clayton's Case, 1 Mer. 572, 608, and is ordinarily applicable where the debts are not separate debts but are a part of an account current kept between the parties, as a banking or cash account, and where there has been no specific appropriation by either party. In that case he said:

"There is no room for any other appropriation than that which arises from the order in which the receipts and payments take place, and are carried into the account. Presumably it is the sum first paid in that is first drawn out; it is the first item on the debit side of the account that is discharged or reduced by the first item on the credit side. The appropriation is made by the very act of setting the two items against each other. Upon that principle all accounts current are settled, and particularly cash accounts."

"The principle" said Benjamin, op. cit., "is 'that where a creditor, having a right to appropriate moneys paid to him generally, and not specifically appropriated by the person paying them, carries them into a particular account in his books, he *prima facie* appropriates them to that account, and the effect of that is that the payments are *de facto* appropriated according to

the priority in order of the entries on the one side and on the other of that account. It is, of course, absolutely necessary  *  *  *  that there should be one unbroken account  *  *  *  and the way to avoid the application of *Clayton's Case,* where there is no other principle in question, is to break the account and open a new and distinct account.' ''

The rule announced in Clayton's Case is founded merely on the presumed intention of the parties and is applicable only when there is no evidence sufficient to show a different intention, for if there is such evidence the presumption fails. Munger on the Application of Payments, p. 120. See also Benjamin, loc. cit. Although this rule has been applied in some cases where open current accounts were involved, and where the items on both sides of the account were not cash items, yet it seems clear to us that the plaintiff, who had the right to make the application when receiving these payments, could not, from anything appearing in the account or for any reason appearing in the evidence, have intended to apply them in the extinguishment of the secured items when, as the evidence shows, with one exception the unsecured items were greater than the amounts paid at the time.

■ It is a matter of common knowledge that many men keep their accounts loosely, particularly men engaged in some small business like that of the plaintiff. As a general rule, such persons do not keep their books and accounts with that degree of care expected of larger concerns where more numerous items and larger amounts of money are involved. As the court well said in *Dulles v. DeForest,* 19 Conn. 190:

"It is obvious, that all the transactions between individuals may be, and often are, entered together in the form of one general account, for the purpose of more readily showing the state of all the affairs between them, or for some other purpose of mere per-

sonal convenience; and it would be unreasonable, indeed, if an inflexible rule of inference should be adopted, which would preclude them from showing, in such a case, what was their real object and intention.''

Again, as the court said in *Upham v. Lafavour,* 11 Metc. (Mass.) 174:

"But it is contended that the plaintiffs have been paid since the commencement of the suit, on the ground that they are bound to apply the proceeds of the sales, received by them, to the extinguishment of the first advances, in the order of time in which they were made. If this principle of appropriation were applicable to the case, the conclusion of the defendant would be correct; and though he might be indebted to the plaintiffs, it would not be on the present cause of action. But we think that the rule applies to running accounts, where such payment must be presumed to have been made without other reference than to the simple discharge of the account, as far as the items of payment will go, and that the rule does not apply where the party having the right to make an appropriation of a payment does actually make it; or, in the absence of such appropriation, when the law, looking at the relations of the parties and the nature of the account or transactions between them, finds another application required in order to do justice between them. Peters v. Anderson, 5 Taunt. 596. Wright v. Laing, 3 Barn. & Cres. 165, and other cases.''

We are not unmindful of the decision in *Patterson v. Bank,* 26 Or. 509 (38 P. 817), where Mr. Justice WOLVERTON was of the opinion that the rule in Clayton's Case applied. The other members of the court, however, while concurring in the result of his decision, did not agree with his conclusion that the rule was applicable to the facts of that case.

■ There is one other circumstance which must now be considered. On November 3, 1933, Angell paid plaintiff the sum of $45. This payment was sufficient to ex-

tinguish all the unsecured items of the account prior to that date and, when so applied, left a balance of $8.40 to be applied in partial satisfaction of the amount secured by the lien. Although other charges were subsequently made by plaintiff against Angell upon his account, a part of which still remains unpaid, the amount found due under the lien by the decree of the lower court must be reduced in the sum of $8.40 which was paid thereon at that time.

The decree, therefore, must be modified so as to credit thereon the said sum of $8.40 together with interest on said sum at the rate of 6 per cent per annum from the date when said payment was made. In all other respects the decree of the lower court will be affirmed but without costs to either party upon this appeal.

BAILEY and ROSSMAN, JJ., not sitting.