Argued and submitted April 30, 1997, decision of the Court of Appeals and judgment of the circuit court affirmed in part and reversed in part, and case remanded to the circuit court for further proceedings February 20, 1998

In the Matter of the Marriage of

Earla Gayle GAYER,
*Petitioner,*

*and*

Scott H. GAYER,
*Respondent.*

STATE OF OREGON ex rel
Earla Gayle GAYER,
*Petitioner on Review,*

*v.*

Scott H. GAYER,
*Respondent on Review.*

(CC 15686; CA A90051; SC S43884)

952 P2d 1030

Russell Lipetzky, of Saucy & Lipetzky, P.C., Salem, argued the cause and filed the petition for petitioner on review.

Karen A. Feil, of Law Office of James M. Habberstad, The Dalles, argued the cause for respondent. James M. Habberstad filed the brief for respondent on review.

Hardy Myers, Attorney General, Virginia L. Linder, Solicitor General, and Jas. Adams, Assistant Attorney General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Graber, Durham, and Kulongoski, Justices.**

VAN HOOMISSEN, J.

** Fadeley, J., retired January 31, 1998, and did not participate in this decision.

**VAN HOOMISSEN, J.**

The issues in this domestic relations case are whether a support obligor, who has a support arrearage, is entitled to direct how support payments will be applied and, if so, whether the obligor (father) in this case directed how his support payments would be applied. The trial court ruled that father could and did direct how some of his support payments would be applied. The Court of Appeals affirmed without opinion. *Gayer and Gayer*, 144 Or App 328, 927 P2d 158 (1996). For the reasons that follow, we affirm in part and reverse in part the decision of the Court of Appeals.

The parties divorced in 1981. Petitioner (mother) was awarded custody of their two children. The dissolution judgment required father to pay $300 monthly per child for child support and $500 monthly for spousal support for three years. Within a month after the dissolution, father began failing to meet his monthly support obligations.

In 1983, the court ordered father's employer to withhold $400 monthly from his wages commencing July 1, 1983, "for the support of" the parties' children. The trial court's order indicates that the $400 per month wage assignment is for "continuing current child support." In 1985, the court modified the dissolution judgment, requiring father to pay $362.50 monthly child support, retroactive to January 1, 1985. Thereafter, father's monthly payments exceeded the principal amount due each month for current child support.

In 1991, mother contacted the Wasco County District Attorney seeking information about renewing the 1981 support judgment.[1] However, based on the District Attorney's advice, mother did not try to renew the judgment at that time.

---

[1] ORS 18.360(1) provides, in part:

"Whenever, after the entry of a judgment, a period of 10 years elapses, the judgment and any docketed or recorded lien thereof shall expire. However, before the expiration of 10 years the circuit or district court for the county in which the judgment originally was entered, on motion, may renew the judgment and cause a notation in the register and the judgment docket indicating the renewal of the judgment to be made. The renewed judgment and any lien thereof expire 10 years after entry of the renewed judgment."

The 1993 Oregon legislature amended the law with respect to *child support* payments. Or Laws 1993, ch 763, §§ 2, 4 (codified as ORS 25.700). ORS 25.700 now provides, in part:

In March 1992, father began paying $575 monthly. In October 1993, father's current wife sent a letter to the Wasco County District Attorney stating:

"[Father and I] have continued to send [mother] $575.00 with $362.50 being ordered for the two children and the rest being applied to spousal support arrears. We intend to continue to send this amount until the arrears are paid in full."[2]

In 1994, mother obtained a renewal of the judgments against father for unsatisfied child support arrearages. Both parties thereafter sought to amend the renewed judgments. Father objected that he had not received credit for all the payments that he had made.

At a hearing in 1995, another dispute arose over how much interest father owed on the spousal and child support arrearages. As of the date of the 1995 hearing, father had paid in excess of the total *principal* amounts due mother for spousal and child support. The focus of the dispute, thus, was on the amount of interest owed for spousal and child support arrearages.[3] Father did not dispute that mother was entitled to receive interest on the arrearages. He argued, however, that some of the interest that he owed was no longer recoverable because the earliest judgments had expired.

After the 1995 hearing, the trial court first ruled that father could direct how to apply his support payments. The court found:

"(1) Notwithstanding ORS 18.360 and 107.126, any judgment that results from an unpaid child support obligation under a child support judgment entered after January 1, 1994, and any docketed or recorded lien thereof, expires 25 years after entry of the child support judgment. The judgment and any docketed or recorded lien thereof may not be renewed.

"(2) A judgment that results from an unpaid child support obligation under a child support judgment entered before January 1, 1994, and any docketed or recorded lien thereof, may be renewed for a 10-year period as provided in ORS 18.360. The court may enter an ex parte order renewing the judgment. This subsection does not authorize the renewal of a judgment that has expired before January 1, 1994."

[2] Mother does not argue that the letter to the Wasco County District Attorney was not notice *to her* of father's purported direction as to how to apply his support payments. We discuss elsewhere whether that letter was an *effective* direction.

[3] There is no dispute at this time as to what amounts of support father paid in any given month.

"[N]either party exercised their authority to direct the application of a payment prior to the Court orders of June, 1983. Payments received prior to [June 1983] should be credited by operation of law to the earliest matured debt. These debts are judgments which consist of both principal and interest. The common law rule requires that the interest on the oldest judgment be paid first and then the principal.

"The most reasonable interpretation of the June, 1983 orders is that beginning July, 1983 the $400 per month should be credited against the current monthly child support.

"Beginning January, 1985 $362.50 should be credited against the current obligation and any surplus should be credited to unpaid arrearages of child support first to interest then to principal on the oldest obligation first.

"Beginning in June, 1985 any amounts paid in excess of $400.00 should be applied to the oldest child or spousal obligation, first to interest then to principal.[4]

"This procedure to be followed until March of 1992, when [father] directed that when he pays $575.00 per month it is his intention that $362.50 should be applied to current child support and $212.50 to spousal support, again, first to interest, then to principal on the oldest obligation."[5] (Citations omitted.)

Mother appealed, and the Court of Appeals affirmed without opinion. We allowed mother's petition for review.

Mother contends that the trial court erred in ruling that, when a support arrearage exists, the support obligor has a right to direct how to apply his payments and that the obligee's consent is not required. She argues that, in the absence of an express agreement between the parties, all payments for spousal and child support, unlike commercial debts, apply to the principal and accrued interest on the earliest accruing support obligation.

---

[4] Beginning in January 1985, father's child support obligation had been reduced to $362.50 monthly for the two children. We assume that any amount that he paid in excess of that amount would be applied to the oldest child support arrearages, interest first.

[5] The trial court's amended judgment, however, does not establish a specific amount of support arrearages.

Father argues that a child support payment applies first to the current month's obligation, then to the earliest matured debt owed the obligor. He posits that, if child support is not applied to the current month's obligation, an obligor in arrears always will be in contempt as to that obligation. The question presented in this context is one of first impression for this court.[6]

ORS 107.135(6) provides, in part:

"The [dissolution judgment] is a final judgment as to any installment or payment of money which has accrued up to the time either party makes a motion to set aside, alter or modify the decree, and the court does not have the power to set aside, alter or modify such decree, or any portion thereof, which provides for any payment of money, either for minor children or the support of a party, which has accrued prior to the filing of such motion."

*See also Hansen v. Hansen*, 272 Or 686, 688, 538 P2d 935 (1975) ("[t]he law is well established that *each installment* which comes due and remains unpaid under a divorce decree providing for alimony or child support *constitutes a separate and final judgment*") (emphasis added; citations and footnotes omitted).

■     The common-law rule respecting the application of payments is settled in this state. In *Fatland v. Wentworth & Irwin*, 149 Or 277, 280-81, 40 P2d 68 (1935), a commercial contract case, this court explained:

"It is a rule of general application upon which this as well as all other courts are agreed: 'That the party paying may direct to what the application is to be made. If he waives his right, the party receiving may select the object of appropriation. If both are silent, the law must decide.'

"And so it has been settled in this state that: 'When a debtor owes a creditor more than one obligation he may, at or before making a payment, direct upon which debt the

---

[6] Two Court of Appeals cases cited by the parties are distinguishable. In *Switzer v. Switzer*, 50 Or App 411, 416, 623 P2d 1142 (1981), the court held that the parties mutually intended to apply husband's payments to specific obligations. In *Keene v. Keene*, 23 Or App 688, 691, 543 P2d 693 (1975), the parties stipulated as to how husband's payments would be credited to his account. In this case, there was no similar agreement between the parties.

credit should be applied, but, if he give no instructions in respect to the matter, the creditor may apply the payment on account of any demand he may have against him.' It is also well settled in this state that, in the absence of directions from the debtor, the creditor has the right to apply a payment upon the secured or unsecured account, as he sees fit[.] And where there is an account, the creditor can apply the payment to the unsecured portion of the account[.] It also was held that where neither party had made the application, the court may make it and, it doing so, will apply the payment to the first unsecured debt[.]'" (Citations omitted.)

In *Fowler v. Courtemanche et al.*, 202 Or 413, 426, 274 P2d 258 (1954), another commercial contract case, this court recognized that, in the absence of a statute or an agreement by the parties to the contrary, the common-law rule regarding the application of payments made by a debtor to a creditor is as follows: "(1) A debtor who makes payment to his creditor having two or more claims may designate the claim to which the payment is to be applied; (2) if the debtor fails to do so, the creditor may make the application;[7] [and] (3) if neither of them makes the application, then it is the duty of the court to make it." If the court can determine with reasonable certainty the intention of the parties, either express or implied, the court shall apply payment accordingly. *See id.* at 443. Generally, when neither the debtor nor the creditor directs application of the payment and the court cannot infer the intention of the parties, payment is applied to the earliest matured debt. *Id.* at 444-45.

A debtor who chooses to direct payment to a particular debt must manifest to the creditor an intent to do so "at or before the time of payment." *Johnson Lbr. Corp. v. Leonard et al.*, 192 Or 639, 668-69, 236 P2d 926 (1951) (quoting *Restatement of the Law, Contracts*, § 387); *Block v. Love*, 136 Or 685, 692, 1 P2d 588 (1931) (same) (citations omitted). The debtor's intent need not be manifested in express words, but may be deduced from acts and other circumstances. *Johnson*, 192 Or at 670 (citing *Restatement of Contracts*, § 387, comment *e*). Unless the debtor is under a duty to apply the payments in a particular way, the consent of the creditor

---

[7] Mother never directed that father's payments be applied in a particular manner.

is not required. *Id.* at 668 (citing *Corbin on Contracts*, § 1231 (" 'a debtor can tender a payment on his own terms and the creditor must receive it on those terms or not at all' ")); *see also Anderson v. Griffith*, 51 Or 116, 120, 93 P 934 (1908) (creditor has duty to obey debtor's command to apply payments in a particular way). As a general proposition of common law, the money belongs to an obligor until he or she makes each payment to the obligee. *See Wolf v. Aero Factors Corp.*, 126 F Supp 872, 880 (SDNY), *aff'd* 221 F2d 291 (2d Cir 1955) ("a debtor, on paying money to his creditor, may direct that the payment be applied to a particular debt, because the money is his and he controls its application"); *see also Schreiber v. Armstrong*, 70 NM 419, 374 P2d 297, 299 (1962) (a debtor has power to determine the application of any money tendered to the creditor, and has the right to say to which of several demands the payment shall be applied).

■     Mother notes that *Fatland* and *Fowler* were commercial cases and that, in *Fowler*, this court relied on the *Restatement of Contracts* which, she argues, should not be a controlling source of authority in a domestic relations case. Mother further argues that the parties in a support case are not dealing at arms length, there is no contract involved, the support obligee often is a financially disadvantaged party and, by definition, the support obligor has failed to pay on time and in full. However, mother cites no authority holding that the foregoing distinctions dictate that the usual common-law rule should not apply in a domestic relations context, and we have found none. We are not persuaded that the common-law rule loses its validity merely because it is applied in a domestic relations context. The fact that the parties once were married does not control the manner in which support payments will be applied. A support obligee's potential financial disadvantage does not affect this analysis; the obligee in a commercial context also may be at a financial disadvantage to the obligor. Nor are we persuaded by mother's argument that the trial court's ruling will lead to insurmountable accounting problems. Although the accounting in this case may be complex, because of the extent of the obligation, the method prescribed by the trial court is straightforward.

The State of Oregon, appearing as *amicus curiae*, advocates a rule that all child support payments are to be

applied first to the current monthly child support obligation and only then to accrued child support arrearages, oldest arrearage first.[8] *Amicus* points out that, under both federal and state regulations, when an obligee is receiving or has received assistance from the state, amounts collected by the state for child support are allocated first to the current monthly obligation.[9] The state argues for "consistency" between those regulations and the common law.

Although the administrative regulations resolve questions of application of payments, they primarily serve to establish the proper distribution of child support. When the recipient of child support is receiving public assistance, the state has a direct interest in ensuring that monies received from the obligor are distributed according to the priorities set forth in OAR 461-195-0244. However, when, as here, the obligee is not receiving, and has not received, public assistance, the state does not have a direct interest in how such payments are applied. We do not find that the text, the context, or the purpose of OAR 461-195-0244 provides a principled basis for departing from the traditional common-law rule with respect to debts arising from support obligations.

Accordingly, we hold that the trial court did not err in ruling that father could direct the application of his monthly support payments.

Mother next contends that the trial court erred in concluding that father had directed the application of his support payments. We disagree. A debtor's intent need not be manifested in express words, buy may be deduced from acts and other circumstances. *Johnson,* 192 Or at 670. There is evidence in the record from which the trial court deduced that father directed that some of his payments should be applied in a particular manner.

---

[8] *Amicus* is involved in child support through a number of avenues and, thus, has an interest in clarifying the common law, statutes, and administrative rules that bear on the enforcement of child support obligations.

[9] The Oregon Department of Human Resources has been granted statutory authority to promulgate rules for the operation of child support programs if required by federal law or regulation relating to child support programs. ORS 409.020(2). The Oregon Administrative Rules track the federal requirement that child support payments be applied first to current monthly child support obligations and then, as to any excess, to arrearages. 45 CFR § 302.51.

■    We disagree, however, with the trial court's ruling that that application of father's payments dates back to March 1992, when he began paying $575 monthly. An obligor may not direct the application of past payments, but may direct payment only "at or before" making a payment. *Block*, 136 Or at 692. Thus, the October 1993 letter to the Wasco County District Attorney applies only to payments made on or after that date.

■    That leaves only the issue of interest computation. Father argues that the parties intended that none of the excess payments would be applied to accrued interest. The trial court ruled against father on that question, and we find no legal basis in the record for overturning the trial court's ruling. The trial court correctly applied the payments in excess of the monthly obligations first to accrued interest on the oldest judgments, and then to principal. *See First National Bank v. Courtright*, 82 Or 490, 498-99, 158 P 277, 161 P 966 (1916) (payments are applied first to interest and then to principal); *see also Devux Corp. v. General Motors Corp.*, 749 F2d 1020, 1025 (3d Cir 1984) (same).

In summary, with the exception of the trial court's ruling that the application of father's payments dates back to March 1992, with which we disagree, we find no error. Because the trial court did not establish a specific amount of accrued support arrearage, including interest, and because we reverse in part, we remand the case to that court for further proceedings.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.